**James R. MAYOCK, Plaintiff,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, et al., Defendants.**

**No. C–85–5169–CAL.**

United States District Court, N.D. California.

June 16, 1989.

Eric J. Sinrod, Peter Koenig, Hancock, Rothert & Bunshoft, James R. Mayock, San Francisco, Cal., for plaintiff.

Joseph P. Russonellio, U.S. Atty., Andrew M. Wolfe, Asst. U.S. Atty., San Francisco, Cal., for defendants.

## OPINION AND ORDER

LEGGE, District Judge.

Plaintiff James R. Mayock is an immigration attorney. He originally filed this suit to require the Immigration and Naturalization Service ("INS") to comply with certain Freedom of Information Act, 5 U.S.C. § 552, (FOIA) requests which he made on behalf of clients. Many of the clients were involved in deportation or exclusion proceedings and were faced with immediate deportation. Plaintiff requested a permanent injunction: (1) requiring the INS to release certain requested FOIA informa-

tion, (2) staying deportation or exclusion proceedings pending compliance with FOIA requests, and (3) requiring the INS to comply with the FOIA requests within the 10–day period provided by statute.

In earlier proceedings in this case, the specific FOIA requests were resolved by the parties and by the court. This case has become a "pattern and practice" case. That is, plaintiff contends that the INS has a pattern and practice of failing to produce certain categories of FOIA information, and of failing to comply with FOIA requests within the statutory 10–day period. Plaintiff claims that this pattern and practice deprives his clients and other aliens of information necessary to enable them to resist deportation before they are actually deported and their requests are rendered moot.

The INS deportation procedures are governed by 8 U.S.C. § 1252(b). This statute provides that an alien has the right to present evidence, and to receive a "reasonable opportunity to examine the evidence against him." However, there are no discovery procedures provided by the INS regulations.[1] FOIA is essentially the only procedure which aliens can use to obtain from the INS information relevant to their cases.

This case was originally filed by certain named aliens represented by Mayock. However, the issues regarding those named plaintiffs have been resolved, and plaintiff Mayock now prosecutes this case in his own name. In an order dated July 6, 1988, this court determined that Mayock had standing to continue the suit and that the claims are not moot.

Plaintiff filed a motion for summary judgment and injunctive relief. The INS responded with its own motion for summary judgment. The court reviewed the moving and opposing papers, the record of the case, the arguments of counsel, and the applicable authorities, and concluded that certain decisions could be made as a matter of law and with no genuine issue of material fact. The court prepared a draft opinion and gave notice to the parties of its intended decision. A hearing was held on the draft opinion and intended decision, and the court heard additional arguments and authorities from counsel. The court also received a supplemental fact record which dealt primarily with the current practices of the INS regarding the procedures at issue in this case.

This court is of the opinion that the decisions set forth below can be made as a matter of law and with no genuine issues of material fact.

### I.

Plaintiff seeks injunctive relief requiring the INS to 1) make a determination on an alien's FOIA requests within ten working days of receipt, 2) give notice if a ten working day extension of time is required, 3) search certain electronic data systems in response to FOIA requests for "all records," and 4) sufficiently describe the documents withheld from production and correlate the withheld documents with the statutory FOIA exemptions.

The usual FOIA case requests the district court to review an agency's denial of a specific request for information. And procedures have been developed for handling such requests on a case-by-case basis, resulting in a grant or denial of specific requests by the district court.

---

1. *Matter of Benitez, in Deportation Proceedings,* A–26433002, Interim Decision No. 2979, Decided by Board, October 3, 1984, page 3; *Matter of Magana, in Deportation Proceedings,* A–342672770, Interim Decision No. 2729, Decided by Board, September 27, 1979, page 115. Under 8 C.F.R. § 287.4(a)(2), INS immigration judges may, on application of the alien, issue subpoenas requiring the attendance of witnesses or the production of documents, upon an offer of proof and a showing that the witness or material could not be produced with diligent effort. The INS conceded at oral argument, however,

that this procedure is not in practice available to subpoena records from the INS itself. Moreover, the court in *Guevara v. INS,* 786 F.2d 1242 (5th Cir.1986), *cert. denied,* 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987), affirmed the denial of a subpoena sought against the INS because FOIA was available to obtain the information requested. *See also Marroquin–Manriquez v. INS,* 699 F.2d 129, 136 fn. 11 (3rd Cir. 1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984) (availability of information under FOIA would undercut the showing of need necessary under 8 C.F.R. § 287.4(a)(2)).

However, broader injunctive relief is available to enforce FOIA under certain circumstances. *Long v. United States Internal Revenue Service*, 693 F.2d 907 (9th Cir.1982). *Payne Enterprises v. United States*, 837 F.2d 486 (D.C.Cir.1988). Those cases granted injunctive relief against agencies which had a "pattern and practice" of withholding FOIA information, and then releasing the information after a FOIA suit was filed. After deciding that equitable remedies were available under FOIA, the Ninth Circuit in *Long* held as follows:

> In utilizing its equitable powers to enforce the provisions of the FOIA, the district court may consider injunctive relief where appropriate. Moreover, where the district court finds a probability that alleged illegal conduct will recur in the future, an injunction may be framed to bar future violations that are likely to occur.....
>
> In determining whether injunctive relief is appropriate to resolve a FOIA dispute, the court's prime consideration should be the effect on the public of disclosure or nondisclosure.... Where, as here, there has been a voluntary cessation of allegedly illegal conduct and thereafter prolonged delays have repeatedly hindered the timely disclosure of non-exempt documents, the district court should seriously consider the likelihood of recurrence, weighing the good faith of any expressed intent to comply, the effectiveness, if any, of the discontinuance and the character of past violations.... Once the district court has fully performed its duties ... and has exercised its discretion in granting or denying injunctive relief, its decision will be overturned only if it relied on erroneous legal principles or abused its discretion.

*Id.* at 909 (*citations omitted*).

## II.

█ Plaintiff has submitted his own declaration and those of other immigration attorneys, which show that the INS's delays in providing FOIA replies are often several months, instead of the 10 days required by the statute. They cite several examples of FOIA information that was received from the INS too late to be used in the aliens' deportation or exclusion proceedings, and which might have made a difference to the outcome. (Declarations of Mayock, Brooks, and Van der Hout). These declarations also state that the local INS office has no procedures for giving preference to requests for information that is urgently needed in deportation proceedings. The declaration of Tony Ju, submitted by the INS, states that the urgency of the requests is considered by the INS, but there are no implementing procedures to give priority to these requests systematically, or to assure that responses are made before the deportation or exclusion proceedings are concluded.

Plaintiff has presented substantial and uncontroverted evidence that lengthy delays are systematic,[2] and that aliens have been excluded or deported before the INS's FOIA replies are received. There is also no dispute as to the form in which the INS office denies requests for information. The denial merely indicates how many pages will not be disclosed, and cites the relevant statutory exemptions. Finally, there is also no dispute that the INS did not, until recently, search any of its computer databases in response to requests for "all records."

Defendants argue that none of these practices have involved the withholding of records in bad faith. However, this court has already determined that the statute may be violated even absent bad faith, (Order, July 6, 1988), although good faith is a consideration in the decision whether to grant an injunction. In considering an injunction, the *Long* case does require the district court to weigh "the good faith of any expressed intent to comply." *Long*, at 909.

---

**2.** The "date due" generated in the INS computer system for each request automatically allows *30 days,* and the tracking records maintained by the office show that, although there has been significant improvement since this lawsuit was filed, some requests are still pending after three months. (Koenig decl.)

The INS has expressed its intention to comply with respect to searching certain electronic records. However, as to the other practices challenged by plaintiff, the INS contends that FOIA does not require what plaintiff requests.

The basic disputes between the parties are therefore ones of law and not of fact. The issue is whether the practices of the INS are in compliance with the requirements of FOIA. If not, injunctive relief is available under the *Long* analysis, p. 909. There is no dispute that the INS uses the above procedures, and that as a result information is not being produced until after aliens have been deported. The INS has not ceased the allegedly illegal practices challenged in this suit, but instead argues that it is not legally obligated to do so. While the INS is making some apparent efforts to reduce the time delays and to correct other problems, there is a strong liklihood of recurrence and serious detriment to aliens facing deportation.

### III.

Plaintiff's primary claim is that the INS does not process FOIA information requests in the time period prescribed by the statute, the regulations, and the agency guidelines.

The starting point is the requirement of the statute. 5 U.S.C. § 552(a)(6) provides:

(A) Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall—

(i) determine *within ten days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request* whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and

(ii) make a determination with respect to any appeal within twenty days....
(B) *In unusual circumstances* as specified in this subparagraph, *the time limits prescribed* in either clause (i) or clause (ii) of subparagraph (A) *may be extended by written notice* to the person making such request setting forth the reasons for such extension and the date on which a determination is expected to be dispatched. *No such notice shall specify a date that would result in an extension for more than ten working days.* As used in this subparagraph, "unusual circumstances" means, but only to the extent reasonably necessary to the proper processing of the particular request—

(i) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;

(ii) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or

(iii) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination ...
(C) Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph. *If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records. (emphasis added).*

Similar provisions are contained in 8 C.F.R. § 103.10(c) and in the INS Administrative Manual.[3]

---

**3.** The INS Administrative Manual reads, in relevant part:

(1) Response Due Date. A response is due to the requester ten (10) working days after receipt by the responsible FOIA/PA office. A written explanation to the requester is required if a response cannot be made in ten (10) working days and may only be extended for an additional ten (10) working days for the following reasons:

Plaintiff claims that the INS must meet the 10-day requirement. The INS claims that it can be relieved of the strict deadlines by § 552(a)(6)(C):

> If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.[4]

Plaintiff contends that this provision only excuses delay in a single, large information request, and cannot excuse FOIA compliance by the agency in the ordinary course of its procedures.

### A.

The 10-day rule was a 1974 amendment to FOIA, prompted in response to administrative agency delay. "[E]xcessive delay by the agency in its response is often tantamount to denial. It is the intent of this bill that the affected agencies be required to respond to inquiries and administrative appeals within specific time limits." H.Rep. No. 876, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News, 6267, 6271.[5]

The time limits ultimately adopted by Congress took into account objections by the Justice Department, by providing for 10-day extensions of time under § 552(a)(6)(B), where the agency must "search for, collect, and examine a voluminous amount of separate and distinct records demanded in a single request," where consultation with another agency is necessary, or where the records come from separate field offices. S.Conf.Rep. No. 1200, 93rd Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News, 6285, 6289.

The conference committee rejected a 30-day extension provision in the Senate bill, which was explicitly meant to take into account the special problems of the INS. *Id.* Even under that proposed extension, the Senate Report states that:

> Agencies that simply processed large volumes of requests or frequently faced novel questions of legal interpretation could not avail themselves of this procedure. Nor could agencies or parts of agencies utilize this certification procedure simply because they had been unable to regularly meet standard deadlines, without a showing of the geographical and other concrete obstacles to the location of files or records present in the INS example.

S.Rep., *supra*, at 27.

Senator Kennedy, one of the amendment's sponsors, explained the time requirements this way:

> Our bill provides an agency 10 working days to respond initially to a request for information, 20 working days on appeal, and an additional 10 working days where unusual circumstances are present. That gives the agency 40 working days, or almost two calendar months—more than enough time for any agency to complete the process of finding and reviewing requested documents. If a person sues the agency after that time, and the

---

(1) The need to search for and collect the requested records/information from other INS offices.

(2) The need to review a voluminous amount of records located that may be responsive to the request.

(3) The need to consult with other federal government agencies having a substantial interest in the requested records/information.

. . . .

c. Acknowledgements. All FOIA/PA requests must be acknowledged as soon as possible, but not later than ten (10) working days after receipt. In those instances where it is anticipated that a full and complete response cannot be made within the ten (10) day time frame, an acknowledgement letter must be sent.

**4.** Such extensions of time, however, remain discretionary, and the decisions of the district court are reviewed on an abuse of discretion standard. *Exner v. FBI*, 542 F.2d 1121 (9th Cir.1976).

**5.** The Senate report cited the results of FOIA oversight hearings, identifying as one of the six major problem areas: "The bureaucratic delay in responding to an individual's request for information—major Federal agencies took an average of 33 days with such responses; and when acting upon an appeal ... 50 additional days." S. Rep. No. 854, 93rd Cong., 2d Sess., (1974), at 3.

agency is still diligently trying to complete review of the materials under exceptional circumstances, then we have another escape valve in the bill ... [t]he agency may ask for, and the court is authorized to grant, additional time pending completion of such review.

*Quoted in Open America v. Watergate Special Prosecution Force,* 547 F.2d 605, 610 n. 11 (D.C.Cir.1976).

### B.

In interpreting FOIA's time provisions, the courts have struggled with the obvious tension between congressional aspirations and agency realities. The gap between expectation and implementation is dramatically illustrated by Congress' belief that the cost of complying with the time deadlines could be absorbed by the agencies' current operating budgets. *See* S.Rep., *supra,* at 41; H.Rep., *supra,* at 6274–75. But the actual cost in additional personnel ran into the millions. *Open America v. Watergate Special Prosecution Force,* 547 F.2d 605, 612 (D.C.Cir.1976). Because of the pressures generated by the time deadlines, the interpretation of the § 552(a)(6)(C) safety valve has become critical.

Only two appellate decisions have interpreted this provision. In *Open America,* the D.C. Circuit Court allowed the FBI extra time under § 552(a)(6)(C) to complete a single large request for information. The court analyzed the "exceptional circumstances" by looking at the agency's reasons for non-compliance with the time deadlines, and it analyzed the "due diligence" by inquiring into the procedures of the agency for processing requests.

The opinion stated that "exceptional circumstances" could encompass the difficulties of an agency that had more requests than it had trained personnel to process them. Pointing out that Congress had obviously not expected the deluge of requests, the court did not require the agency to comply with the 10–day rule. The court further stated that the agency demonstrated "due diligence" by processing the requests on a first-come, first-served

basis. The court thought that it would be inequitable for a plaintiff to receive priority processing ahead of other pending requests by filing a FOIA suit, and the court required plaintiffs to show an urgent need for the information in order to claim any priority.

Judge Leventhal concurred only in the result and rejected much of the majority opinion. He emphasized that Congress has placed the burden of justifying delays on the agency, and that the agency could show "exceptional circumstances" only insofar as its backlog was "entirely unforeseen and unforeseeable." *Id.* at 617. And, he stated that in addition to merely having reasonable procedures, the agency's showing of due diligence could depend on "whether the agency has applied for additional funds to meet the unexpected upsurge in requests, whether it has been or is now willing to allow partial release of documents ... and whether it has or will defer considering any voluntary actions of disclosure." *Id.* at 618. Recognizing that the agency was having great difficulty complying with the FOIA deadlines, and recognizing that a court could properly withhold a contempt sanction in such cases, Judge Leventhal nonetheless stressed that the gap between aspiration and reality:

> should not affect our duty to construe the underlying statute to accord with Congressional intent.... [s]oftening that mandate by construction serves to provide a gloss that the agency is properly performing the duties assigned by the statute, and operates, in effect, to gloss over and screen out any shortfalls in agency performance from the committees and bodies of the legislature.

*Id.* at 618.

The Ninth Circuit, in *Exner v. FBI,* 542 F.2d 1121 (9th Cir.1976), also rejected the majority opinion in *Open America,* and agreed with Judge Leventhal's reasoning. However, the court's decision does not provide controlling guidance here. The court held only that "the 'first in—first out' consideration of demands, based on date of filing with the FBI, ordinarily seems reasonable, and we hold that the filing of suit

by a person demanding information can (but does not necessarily) move such petitioner 'up the line'." *Id.* at 1123.

District Courts have likewise been uncomfortable with interpretation of § 552(a)(6)(C). One district court, before *Open America,* decided that a backlog of requests could constitute "exceptional circumstances" if the backlog was not predictable or expected. *Cleaver v. Kelley,* 415 F.Supp. 174, 176 (D.D.C.1976). However, the same court, basing its conclusion on the legislative history of the deleted special 30–day extension provision, concluded that agencies that "simply processed large numbers of requests" could not avail themselves of § 552(a)(6)(C). *Hayden v. United States Department of Justice,* 413 F.Supp. 1285, 1289 (D.D.C.1976). More recently, the court in *Reagan Bush Committee v. FEC,* 525 F.Supp. 1330, 1337 (D.D.C.1981) held that the wide scope of a single request could constitute "exceptional circumstances." Another line of cases rejected *Open America* entirely, holding that allowing agencies to take advantage of the "exceptional circumstances" provision because of inadequate staffing would effectively swallow the 10–day requirement of the statute. *Hamlin v. Kelley,* 433 F.Supp. 180, 182 (N.D.Ill.1977); *Caifano v. Wampler,* 588 F.Supp. 1392 (N.D.Ill.1984). However, the court in *Caifano* stated "[i]n short, we find ourselves in a troubling position, and one that is unique in our experience: whether or not defendants have violated the ten-day response provision of the FOIA, there is nothing we can do at this time to give plaintiff relief." *Id.* at 1394.

This judicial frustration has led other district courts to despair of a wholly rational construction of the statute, and to focus on finding an equitable solution to the problem at hand, balancing the needs of both the agency and the plaintiff. *Ettlinger v. FBI,* 596 F.Supp. 867, 878–79 (D.Mass. 1984); *Hinton v. FBI,* 527 F.Supp. 223, 224–25 (E.D.Penn.1981).

Thus, the courts have not clearly decided whether a routine administrative backlog, as in this case, constitutes "exceptional circumstances." All of the cases above involved either very large single requests, or a very steep jump in the number of requests in a short time period.

Nor is it clear, as the INS contends, that a "first come, first served" procedure always amounts to "due diligence." The courts have been sensitive to the context of the requests and the plaintiffs' need for the information, and they have expected the administrative procedures to take those needs into account. *See also* Steinberg, *The 1974 Amendments to the Freedom of Information Act: The Safety Valve Provision § 552(a)(6)(C) Excusing Agency Compliance with Statutory Time Limits—A Proposed Interpretation,* 52 Notre Dame Lawyer 235 (1976).

### C.

It is doubtful whether § 552(a)(6)(C) was really intended by Congress to answer the problems presented by this case. That section appears to contemplate separate suits in district court to enforce specific FOIA requests. *Accord, Long,* at 910. It does not expressly address the "pattern and practice" problem. Nor does it address the results of delay here, that if an alien filed such a suit and a district court granted an extension to the INS, the delay could result in the alien's deportation before the requests could be answered.

In this case, the number of requests made to the INS had risen in the past few years, resulting in a larger backlog. (Koenig and Ju decls.). The INS states that it has, during the course of this lawsuit, decreased its processing delays. And it appears that the requests at issue in this case are of more-or-less routine size—less than 100 pages of materials culled from the file of each individual alien. Thus, this case presents the issue of whether a "normal" agency backlog can constitute the "exceptional circumstances" under the statute.

While Congress apparently did not assess the costs of compliance with FOIA time deadlines, this court has difficulty finding that a normal, predictable workload is an "exceptional circumstance," especially where the INS has made no showing that it

has unsuccessfully sought more FOIA resources from Congress or attempted to redirect its existing resources. Otherwise, as the *Caifano* court observed,

> [s]o long as an agency could show that it had received more requests than it could handle, and that it was proceeding diligently—and we would be surprised if most agencies could not show this—then it would not be obliged to comply with the ten-day requirement. This interpretation would render the ten-day clause a non-entity. It seems unlikely that Congress intended such a result.

*Caifano,* at 1394.

Nor does it seem to accord with requirements of "due diligence" that the INS gives no special priority to requests needed in time for deportation or exclusion proceedings. Courts have been sensitive to the claimants' needs for information, and even the *Open America* court thought that this should be considered in evaluating an agency's procedures. *Open America,* at 613, 615. The INS has not shown statutory "due diligence" in processing the requests of aliens here, insofar as it accords no weight to the aliens' need for the information in a pending deportation proceeding.

The court therefore concludes that section 552(a)(6)(C) is not a defense available to the INS in this case. While that section might be invoked as a reason for requesting additional time for individual requests that are large or complicated, it does not constitute a defense to delays that result from the ordinary course of business in processing FOIA requests.

■ Plaintiff also complains that the aliens do not even receive the appropriate notice of the § 552(a)(6)(B) 10-day extension, and the reasons therefor. The INS practice is initially to acknowledge receipt of the request, but it does not send separate notice invoking the § 552(a)(6)(B) ex-

tension. This practice also violates the legislative mandate.

## IV.

■ Plaintiff complains that the INS does not search for electronic information in its responses to requests for "all records." [6] The INS counters that it does so now that it knows that plaintiff wants it. Indeed, it seems that the INS now has complied with plaintiff's specific requests for such information.

However, the parties still disagree as to whether all requests for "all records" must necessarily include electronic databased information. Plaintiff's interpretation is supported by the principle that "the agency bears the burden of establishing that any limitations on the search it undertakes in a particular case comport with its obligation to conduct a reasonably thorough investigation." *McGehee v. CIA,* 697 F.2d 1095, 1101 (D.C.Cir.1983), *vacated in part on other grounds,* 711 F.2d 1076 (1983). The Ninth Circuit in *Long v. IRS,* 596 F.2d 362, 365 (1979), *cert. denied,* 446 U.S. 917, 100 S.Ct. 1851–64 L.Ed.2d 271 (1980), stated that "FOIA applies to computer tapes to the same extent it applies to any other documents." [7] And, it is the government's burden to show that a refusal to disclose a requested record is justified by some FOIA exemption under 5 U.S.C. § 552(b). Therefore, an "all records" request should generally be interpreted by the INS to include searches of relevant electronic databases.

## V.

■ Plaintiff also complains that the INS's procedure for invoking FOIA exemptions states too little about what types of documents are being withheld. The agency's current practice is to reveal only the number of pages withheld, and to list the statutory exceptions on which it relies.

Plaintiff asks that the INS prepare es-

---

6. The INS argues that this claim was not expressly framed in plaintiff's complaint. However, the parties have briefed an argued this issue and have fairly presented it for decision.

7. This case was disapproved on other grounds by *Church of Scientology of California v. IRS,* 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987).

sentially a *Vaughn* [8] index each time it refuses to disclose a document, specifying:

A. Sequential enumeration of total responsive pages; and

B. Specification of the total number of pages of: existing paper documents and other physical records; printouts of electronic documents; documents with partial withholding; and documents with total withholding.

C. Sequential responsive page number of the withheld document;

D. Type of medium in which the document is maintained (paper, electronic, audio, video, or other);

E. Date of creation of the document;

F. General description of the parameters of the document, including title, subject matter, form number or "re," names and titles or positions of the authors;

G. Statutory basis for the exemption;

H. The factual material supporting the exemption;

I. The reasons why public interest does not favor disclosure.

The INS argues that this is an unreasonable demand, and states that it would treble the time spent on each request. (Ju decl). Several courts have shown some reluctance to impose such a burden at the administrative level. *Safecard Services, Inc. v. SFC,* D.D.C. No. 84–3073, Order, April 21, 1986 (Opp. exh. B); *Crooker v. CIA,* D.D.C. No. 83–1426, Order, Sept. 28, 1984 (Opp. exh. C). *Mead Data Central, Inc. v. United States Department of the Air Force,* 566 F.2d 242, 251 (D.C.Cir.1977) held that failure of an agency to use *Vaughn*-type procedures was not grounds to reverse a judgment of that district court that the requested information was exempt. However, the appellate court did note in dicta that "we agree with Mead Data that the objective of the *Vaughn* requirements, to permit the requesting party to present its case effectively, is equally applicable to proceedings within the agency." *Id.* at 251.

The statute requires that, when the agency invokes an exception under FOIA, it must notify the requestor of "the reasons therefor, and of the right of such person to appeal to the head of the agency." 5 U.S.C. § 552(a)(6)(A)(i). Administrative regulations further specify:

The reply shall include a reference to the specific exemption under the Freedom of Information Act authorizing withholding of the records. *The notice of denial shall contain a brief explanation of how the exemption applies to the record withheld* and, if the deciding official considers it appropriate, a statement of why the exempt record is being withheld.

8 C.F.R. § 103.10(d)(2) (*emphasis added*). This language seems to require more information than just the number of pages withheld and an unexplained citation to the exemptions. However, a *Vaughn* index for each request would compound the problems of delay.

The INS indicated at oral argument that it is currently experimenting with a new procedure that reveals more about what is being withheld. This new procedure apparently indicates what types of documents are being withheld, and correlates the documents to the exemptions relied upon. This court therefore believes that the present record does not justify the granting of the broad injunction which plaintiff requests.

## VI.

The court recognizes that there are administrative problems in implementing the above decisions requiring the INS to comply with FOIA. Two require some discussion.

■ This opinion has discussed the necessity for giving some priority to the requests of aliens who need the FOIA information for purposes of deportation or exclusion proceedings. Courts have been sensitive to the context of FOIA requests and to the plaintiff's need for the information, and they have expected that the ad-

---

8. A *Vaughn* index provides the grounds for claimed exemptions, and is required when an agency is asked to justify its claimed exemptions under FOIA. *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

ministrative procedures would take these needs into account. Some requirement of priority is therefore appropriate where the applicant is facing permanent exclusion from the United States before receiving the information he requests. But there are difficulties in attempting to frame an order of priority. There are undoubtedly other applications made to the INS which, for reasons unknown to this court, may require even more rapid handling. This court does not believe that it can or should attempt to establish a priority list for the order in which FOIA requests should be answered. Nevertheless, this court can order that the urgency of the need for the information in deportation or exclusion proceedings be given due consideration by the INS in determining the order in which it will respond to FOIA requests.

Extensive arguments have been made by the parties about whether this court's decisions are applicable to the INS nationally, or only to the San Francisco District Office. To the extent that this court is interpreting the Acts of Congress and the INS regulations, the decisions must necessarily apply to the INS nationally. However, when dealing with the specific injunctive relief to be awarded to this plaintiff, the court believes that the injunctive relief should be limited to the San Francisco District Office. The reason is that the fact record before the court is adequate with respect to that district office, but not with respect to the many other INS district offices around the United States.

## VII.

Because of the decisions made above, this court need not discuss or decide the other grounds for summary judgment or other arguments made by plaintiff or defendant. Both parties motions are denied to the extent not discussed and granted above.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:

(1) Plaintiff's motion for summary judgment is granted in part, and defendant's motion for summary judgment is denied.

(2) Pursuant to the Declaratory Judgment Act, this court declares that:

(a) Title 5, U.S.C., section 552(a)(6)(C) may not be invoked by the INS as a general exemption from the time requirements of FOIA. In order to invoke that exemption properly, the INS must demonstrate "exceptional circumstances" other than the number or backlog of applications. The exemption is applicable primarily to individual requests which are large or complicated.

(b) The INS must issue the appropriate notices of extension of time required by section 552(a)(6)(B).

(3) The San Francisco District Office of the INS is hereby ordered to:

(a) Refrain from failing to comply with the time requirements set forth in 5 U.S.C. § 552(a)(6)(A), (B), and (C);

(b) Give due consideration for priority to the requests for information by aliens who have urgent need for the information in pending deportation or exclusion proceedings.

(c) Search relevant electronic databases as a part of responses to requests for "all records."

(4) Plaintiff is awarded costs of suit.

(5) The court will retain jurisdiction to determine whether an award of attorney's fees to plaintiff is appropriate, and to determine compliance with this order.

(6) Plaintiff is to submit to this court, within 15 days of the date of this order, an appropriate form of judgment.