**Herman Benjamin FERGUSON, Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGATION, Defendant.**

No. 89 Civ. 5071 (RPP).

United States District Court, S.D. New York.

Oct. 24, 1989.

---

Center For Constitutional Rights, New York City by Joan P. Gibbs, Stephanie Y. Moore, Colin Moore, Brooklyn, N.Y., for plaintiff.

Benito Romano, U.S. Atty. S.D. New York, New York City, Gabriel W. Gorenstein, Asst. U.S. Atty., of counsel, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This matter is before the Court on plaintiff's motion for a preliminary injunction to compel expedited processing of Freedom of Information Act (FOIA) requests for documents and indexes, and on defendant's motion to extend the time required to respond to plaintiff's requests.

On June 15, 1968, a jury in a New York state court found plaintiff Herman Benjamin Ferguson guilty of conspiracy to murder. Mr. Ferguson was a prominent African American activist in the New York City

area at the time. He fled to Guyana in 1970 after exhausting his appeals and before serving any of his 3½ to 7 year sentence. He was then promptly indicted on charges of bail jumping in the first degree.

On April 6, 1989, Mr. Ferguson voluntarily returned to New York. The following day he was arraigned on the bail jumping indictment and began serving his sentence on the conspiracy conviction. On June 30, 1989, Acting State Supreme Court Judge Joan O'Dwyer dismissed the 1970 bail jumping indictment because of the unavailability of the grand jury minutes for inspection. The grand jury again indicted plaintiff on the bail jumping charge on August 31, 1989.

Currently pending in the New York courts are plaintiff's actions to vacate his original conviction and to dismiss the bail jumping indictment. Plaintiff has made Freedom of Information Act requests to the defendant Federal Bureau of Investigation (FBI) for documents which plaintiff contends may aid his state court efforts.[1]

The matter before the Court concerns the timing of defendant's fulfillment of the FOIA requests. Plaintiff made FOIA requests in August 1980 and April 1989, respectively, for FBI documents relating to himself. The FBI responded to the 1980 request in 1984 by supplying 984 edited pages to plaintiff's attorney at the time, Mr. Lennox S. Hinds. The FBI agrees to begin processing the 1989 request in June 1990. The 1989 request will yield approximately 3,400 pages which will take 120 days to compile, according to defendant. The 1989 application will yield more documents than the 1980 request because of the extra nine years of files and the addition of requests directed to the New York and Philadelphia field offices of the FBI.

Plaintiff believes records compiled between 1963 and 1970 will aid his state court cases. Defendant declares that 2,411 pages of the 1989 request relate to the years 1963–1970. Defendant contends that this priority portion of the 1989 request could be processed in 85 days, commencing in June 1990. At oral argument and in her "Post–Argument Memorandum," plaintiff's attorney set forth a further prioritized segment of time: January 1965 through October 1968, from the time of the alleged opening of a New York field office file on plaintiff through the conclusion of plaintiff's conspiracy trial.

Plaintiff also has requested the compilation of *Vaughn* indexes, which would explain the necessity for each redaction in both the 1980 and 1989 requests. Creation of a *Vaughn* index is a standard procedure which precedes a challenge in a district court to the appropriateness of redactions in response to FOIA requests. *See Brown v. FBI*, 658 F.2d 71, 74 (2d Cir.1981); *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The FBI agrees to compile an index for the 1980 request, but asserts that a request for an index relating to the 1989 request is premature because plaintiff has not yet seen the documents.

Defendant estimates that the creation of an index pertaining to the entire 1980 request will take 60 days and cannot begin until June 1990. Alternatively, creation of an index for the 1963–1970 portion of the 1980 request would take 32 days, also commencing in June 1990.

Plaintiff seeks a preliminary injunction to expedite fulfillment of the *Vaughn* index requests and the 1989 FOIA request. Defendant opposes the motion and moves, in reference to the 1989 request, for an extension of the time limit set by FOIA for response to requests for records.

## I. The 1989 Request

 Three factors control the Court's determination of an appropriate schedule for defendant's response to the 1989 request: (1) the statutory time limit, (2) the statutory extension test, and (3) the expedition

---

**1.** In May 1989, Justice Thomas of the New York Supreme Court ruled that FBI materials currently in plaintiff's possession provided insufficient grounds for vacating plaintiff's conviction. Gibbs Aff., Ex. 272.

test. The Court considers each factor before arriving at a conclusion.

### A. The Statutory Time Limit and the 'Due Diligence–Exceptional Circumstances' Extension Test

FOIA, 5 U.S.C. §§ 552(a)(6)(A), (B), sets a limit of 20 days from the request date (10 days with a 10 day extension) for the completion of an agency's response. Section 552(a)(6)(C) grants district courts discretion to allow an agency additional time upon a government showing of "exceptional circumstances" and "due diligence." FOIA does not require district courts to grant extensions upon a showing of "due diligence" and "exceptional circumstances" and the government acknowledged at oral argument that the Court has full discretion in determining the petition.

In the D.C. Circuit, courts generally have granted extensions when presented with evidence of an overburdened agency following necessary procedures. *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 614–16 (D.C.Cir. 1976) (refusing to disrupt agency's "first-in, first-out" system); *Reagan–Bush Comm. v. FEC*, 525 F.Supp. 1330, 1337 (1981) (same).

Judge Levanthal's concurrence in *Open America*, the Ninth Circuit and assorted district courts have interpreted Section 552(a)(6)(C) as requiring more limited deference to the contentions of agencies. *See Open America*, 547 F.2d at 617–18 (Levanthal, J., concurring) (only "unforeseeable" backlog should qualify as "exceptional circumstance"; and whether agency has applied for additional resources to handle burden is part of "due diligence" factor); *Exner v. FBI*, 542 F.2d 1121 (9th Cir.1976) (following Levanthal concurrence); *Mayock v. INS*, 714 F.Supp. 1558, 1565–66 (N.D.Cal. 1989) (routine, "normal" backlog is not "exceptional"); *Califano v. Wampler*, 588 F.Supp. 1392 (N.D.Ill.1984) (dictum on danger of Section 552(a)(6)(C) "swallow[ing]"

the 20 day response period set by Congress).

The basis for more stringent requirements for extensions is primarily the legislative history which states that delay can be "tantamount to denial." H.Rep. No. 876, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News, 6267, 6271.

Yet in practice, courts usually grant at least some sort of "due diligence-exceptional circumstances" extension in the form of an equitable compromise. *Ettlinger v. FBI*, 596 F.Supp. 867, 878–79 (D.Mass.1984) (after agency delay of nearly one year, court orders FBI to produce documents and *Vaughn* index within 60 days to avoid court supported undermining of FOIA); *Califano v. Wampler, supra,* (ordering agency to proceed efficiently with the "first in, first out system" and to deliver individual documents as soon as they become ready); *Hinton v. FBI*, 527 F.Supp. 223, 225 (E.D.Pa.1981) (ordering piecemeal production in ninety day intervals with documents most urgently needed by plaintiff to be produced first); *Hamlin v. Kelley*, 433 F.Supp. 180 (N.D.Ill.1977) (ordering immediate commencement of production of 20% of requested documents with an additional 20% to be delivered every 30 days).

Plaintiff contends that the FBI's projected dates for completing the 1989 request are unsatisfactory under the "due diligence-exceptional circumstances" test in light of the anti-delay policy behind FOIA.[2] Defendant responds by detailing its diligence in affidavits explaining each step of the lengthy procedure necessary for a response to Mr. Ferguson's 1989 application. Defendant further contends that it currently faces the exceptional circumstance of a being overburdened. Responsible for this burden is the 45.6% increase in requests over the last three years and repeated denials of the FBI's requests to the Office of Management and Budget for more personnel to handle the overload.

---

**2.** Plaintiff also alleges a lack of due diligence based upon a proportional inaccuracy in the government's claim that it will take 120 days to process 3,400 pages and 60 days to index only 984 pages. After having reviewed the affidavits explaining the process required to reread and index the already released 984 pages, the Court can give little weight to plaintiff's contention. Rereading and indexing is a different process than editing for release.

## B. Expedition Test

In addition to the statutory time limit and the Section 552(a)(6)(C) extension test, a third factor enters the Court's determination of the appropriate timing for a response to plaintiff's April 1989 FOIA request. Courts and some agencies, have interpreted FOIA to require expedited processing of requests whenever an "exceptional need or urgency," *Open America*, 547 F.2d at 616, or due process right is at stake, *Cleaver v. Kelley*, 427 F.Supp. 80, 81 (D.D.C.1976) (documents needed for criminal trial); *see also* Def.Ex.D (Justice Department policy of expediting processing of documents needed by parole applicants for use in their hearings).

The due process interest must be substantial. Thus a need for the information for use in civil proceedings has generally been held to be insufficient to require expedition. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 243, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978) (witnesses statements need not be released prior to an unfair labor practice hearing because "FOIA was *not* intended to function as a discovery tool") (emphasis in original); Def.'s Ex.D (citing unpublished *Rivera v. Drug Enforcement Agency*, (D.D.C.1981) ("A pending civil suit does not generally qualify a FOIA demand for expedited processing.")).

Defendant contends that plaintiff's need for the 1989 request is primarily to help vacate his 1968 conviction. That need constitutes too weak a due process interest to trigger expedition, according to defendant. The only support for defendant's characterization is *Gonzalez v. DEA*, No. 80 Civ. 2360 (D.D.C. Nov. 20, 1980) (need of FOIA files to aid standard post-judgment attack on criminal conviction is insufficient to require expedition).[3]

The Court need not reach the issue of whether all prisoners' post-conviction requests raise liberty interests sufficient to require expeditious processing. Plaintiff's desire for the documents rests upon needs for uses in a post-conviction challenge uniquely deserving of FOIA attention, as well as an upcoming criminal trial. Thus the Court finds plaintiff's needs to be distinguishable from those in the *Gonzalez* case.

Plaintiff's post-conviction request is atypical because his trial and appeals took place at a time when it was unlikely that he could have received any information from the FBI. Before the amendments to FOIA Section 552(b)(7) in 1974, there was a "'stone wall' against public access to any material in an investigatory file." 437 U.S. at 229, 98 S.Ct. at 2321 (quoting remarks of Senator Philip A. Hart, author of 1974 amendment to Section 552(B)(7)). The original statute permitted nondisclosure of "investigatory files compiled for law enforcement purposes except to the extent available by law to a private party." 80 Stat. 251. "[O]nce it had been determined by a District Judge that files, '(1) were investigatory in nature; and (2) were compiled for law enforcement purposes, such files [were] exempt from compelled disclosure.'" Freedom of Information Act Source Book, House Committee on Government Operations, Senate Judiciary Committee, 94th Cong., 1st Sess. 343 (1975) (Statement of Senator Thurmond, May 30, 1974, quoting *Weisberg v. United States Dept. of Justice*, 489 F.2d 1195 (D.C.Cir.1973), cert. denied, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974)) [hereinafter cited as Source Book].

The restrictive effect of the investigatory file exemption had become firmly embedded in the caselaw by a string of cases in the early 1970's, *see Center for National Policy Review on Race and Urban Issues v. Weinberger*, 502 F.2d 370 (D.C.Cir.1974); *Ditlow v. Brinegar*, 494 F.2d 1073 (D.C. Cir.), cert. denied, 419 U.S. 974, 95 S.Ct. 238, 42 L.Ed.2d 188 (1974); *Aspin v. Dept. of Defense*, 491 F.2d 24 (D.C.Cir.1973);

---

**3.** In addition, the Court takes notice of a statistic that may support defendant's contention that post-conviction requests should not receive priority. Approximately 11.8% of all FOIA requests to the FBI are from prisoners requesting records concerning themselves. Superneau Dec. at 3, ¶ 8. Thus the Court hesitates to set a precedent for requiring expedition of a significant portion of the FBI's FOIA requests.

*Weisberg, supra.* The Court finds no reason to doubt that the blanket language of the original "investigatory file" exemption would have had the same harsh effect upon a request by Mr. Ferguson to the FBI in 1968.

There were also other reasons why before 1974, FOIA functioned as a " 'freedom from information' law, with the curtains of secrecy still tightly drawn around the business of government." Source Book 155 (reprinting S.Rep. No. 854, 93d Cong., 2d Sess. (1974)). The statute permitted delays and fee abuses to be utilized as "effective bureaucratic tool[s] in denying information to individual requestors." Source Book 155. Moreover, many agencies required requestors to specify the "specific title or file number" of a document. Source Book 125.

The 1974 Amendments to FOIA addressed all of these issues. Over vigorous opposition by the FBI and its supporters in Congress, *see, e.g.,* Source Book 341–43 (Statements of Senator Thurmond and Senator Hruska), the investigatory file exemption was limited "to make clear that the Exemption did not endlessly protect material simply because it was in an investigatory file." [4] 437 U.S. at 230, 98 S.Ct. at 2321. The new FOIA also required requestors only to "reasonably describe" rather than specifically "identify" documents. Source Book 225.

In light of these reforms after plaintiff's trial, the Court does not deem plaintiff's liberty interest in receiving the files to be weakened because he waited until after his conviction to make a FOIA request for potentially exculpatory material from the FBI.

Plaintiff also contends that his request is outside the scope of the *Gonzalez* holding because the files could affect his upcoming trial for bail jumping. The Court finds two possible uses for the FBI documents at this trial. These uses are directly related to the potential role of the FBI documents in plaintiff's challenges to his conviction.

First, plaintiff has submitted documents to the Court disclosing an FBI policy of encouraging local police to engage in questionable practices against African American activists at the time of Mr. Ferguson's arrest. *See, e.g.,* Attachment 3 at p. 2, Pl.'s Post–Argument Mem., Memo from FBI Director, April 4, 1968 (explaining FBI activity resulting in Philadelphia police arresting black activists "until they could no longer make bail"). Revelations that the arrest of Mr. Ferguson occurred as a result of similar practices could lead a state judge to utilize the discretion authorized by New York Penal Law § 210.40 to dismiss the bail jumping indictment "in furtherance of justice." Second, exculpatory evidence concerning the conspiracy conviction could serve as a mitigating circumstance in the bail jumping sentencing. *See* New York Penal Law § 70.25(2–c) (bail jumping sentence cannot be served concurrently unless "mitigating circumstances").

Defendant further argues that an urgent need for the files cannot exist because plaintiff has failed to show a connection between the contents of the documents and the possibility that they will vindicate plaintiff. Plaintiff contends that the FBI files will reveal exculpatory evidence and due process violations at the 1968 trial under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (prosecutor must supply defense counsel with pretrial statements of prosecution witnesses) and

---

**4.** Section 552(b)(7) now exempts:

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal property, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of an investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;

The Court expresses no view on whether the FBI may be able to establish that portions of those files sought by plaintiff are eligible for a Section 552(b)(7) exemption.

*People v. Rosario*, 9 N.Y.2d 286, 213 N.Y. S.2d 448, 173 N.E.2d 881 (1961) (same).[5]

Defendant's objection is premature because the documents have not yet been reviewed. Records currently available establish that an extensive FBI investigation of Mr. Ferguson did occur. Moreover, plaintiff has submitted FBI records indicating that the FBI had been conducting covert activities designed to injure Black Nationalist activists like Mr. Ferguson during the time of plaintiff's indictment. Whether the documentation of these FBI investigations and activities manifests evidence probative of plaintiff's claims in either the post-conviction challenge or the upcoming bail jumping trial are issues exclusively for the state courts. In *Cleaver v. Kelley*, the evidence indicated simply that FBI files "may ... aid" plaintiff. 427 F.Supp. at 81. That speculative possibility was enough for the *Cleaver* court to conclude that the FBI should process Mr. Cleaver's requests before requests of others filed earlier:

> The public interest lies in assuring a complete and thorough adjudication of criminal matters. Such an interest outweighs that of those seeking material in the pursuit of less fundamental rights. *Id.* at 82.

### C. Conclusion

To review, the Court is confronted with an agency overwhelmed with requests and thus in violation of the statutory time limit. The defendant nominally satisfies the version of the "due diligence-exceptional circumstances" extension test set forth by the majority in *Open America, supra.* In addition, plaintiff contends that the receipt of the files could aid his attempts to attain relief from a future deprivation of liberty (for bail jumping) and the deprivation of liberty he suffers with each day of delay (for the conspiracy conviction). The Court is faced with a potential conflict between the defendant's satisfaction of the *Open America* extension test and respect for

plaintiff's liberty interests and the statutory time limit.

In the absence of any precedential authority in this circuit, the Court is unwilling to sanction undermining of the statutory time limit and plaintiff's liberty interests based entirely on defendant's satisfaction of the *Open America* extension test. The Court finds guidance for harmonizing this conflict between the extension and the expedition tests in the recent decision in *Mayock v. INS, supra.* The *Mayock* court construed the "due diligence" extension test to hinge on whether the agency has manifested "due consideration" for the "urgency of need for the information." 714 F.Supp. at 1566. Under *Mayock*, the presence of an urgent need, which has not been considered sufficiently by the agency in its scheduling decision, would not only entitle the FOIA applicant to expedition, but also have the consequence of eliminating an agency's eligibility for an extension.

The Court follows *Mayock* and finds that defendant is not entitled to a further extension. The schedule set forth by defendant treats plaintiff's 1989 FOIA application like every other application in the "first in, first out" system. Defendant fails to satisfy the "due diligence" extension test because defendant has not considered the seriousness of plaintiff's need in scheduling the response.

Moreover, the Court finds that plaintiff's liberty interests require expedition. Approximately six months have passed since plaintiff filed the 1989 FOIA request. If the Court accedes to defendant's proposed schedule, a delay of over one year will have occurred and plaintiff will have served approximately ⅔ of his 3½ year minimum sentence by the time he receives the files. The Court therefore orders immediate priority to the production of those records needed most by plaintiff.

Piecemeal production of documents according to the urgency of need for them is

---

**5.** The need for the documents as potential support of allegations of a *Brady* violation further distinguishes plaintiff from the typical post-conviction requestor. If plaintiff had been aware of the existence of FBI documents pertaining to his case before trial, he would undoubtedly have made discovery requests. If the FBI had complied with the requests then he would not need the documents after trial.

common in court ordered schedules for responses to FOIA requests and consistent with the goals of this decision. The Court orders processing of files from the designated high priority period of January 1965 to October 1968 to begin immediately. Thereafter, defendant is to process the remaining documents in the priority period of 1963 to 1970. The FBI is to complete processing of these documents in 85 days, the amount of time specified as required in defendant's declaration.

The remaining documents from 1971 to 1989 may be processed by the FBI in accordance with the "first in, first out" system. The Court declines to expedite the processing of the documents from this latter period because plaintiff has not alleged any urgent need for them.

## II. The Vaughn Index Requests

■ Plaintiff has also filed motions to compel expedited compilation of *Vaughn* indexes for the 1980 and 1989 requests. Preparation of a *Vaughn* index "require[s] agencies to itemize and index the documents requested, segregate their disclosable and non-disclosable portions, and correlate each non-disclosable portion with the FOIA provision which exempts it from disclosure." *Brown v. FBI*, 658 F.2d at 74.

The courts created the concept of a *Vaughn* index as a tool to "assist the trial court in its de novo review" of agency refusals to disclose materials or portions of materials. *Donovan v. FBI*, 806 F.2d at 58–59. *See Vaughn*, 484 F.2d at 826 (index "permit[s] the court system effectively and efficiently to evaluate the factual nature of disputed information").

Speed is an essential element in this process of de novo review under FOIA. *See* H.R.Rep. No. 985, 98th Cong., 2d Sess. 6, reprinted in 1984 U.S.Code Cong. & Admin. News 5708, 5779, 5783 [hereinafter Priorities Act Report] ("Prompt review of decisions denying access to government information is critical to FOIA users and to the purposes of the Act."); Source Book 165 ("congressional intent to have FOIA cases decided with the least possible delay").

The Federal Courts Civil Priorities Act mandates:

[T]he [district] court shall expedite the consideration of any action ... if 'good cause' therefor is shown. For purposes of this subsection, 'good cause' is shown if a right under ... a Federal Statute (including rights under section 552 of title 5) would be maintained in a factual context that indicates that a request for expedited consideration has merit.

28 U.S.C. § 1657(a). The legislative history adds:

[I]t is the intent of the Committee that the 'good cause' provision be liberally construed by the courts in granting requests for expedited consideration under the Freedom of Information Act.

Priorities Act Report 5784.

■ The Court interprets the Priorities Act expedition mandate to apply to the scheduling of *Vaughn* index preparation, because an index is an integral component of trial court review of FOIA challenges to non-disclosure of information. Furthermore, the Court finds plaintiff to have satisfied the Priorities Act's requirement that the claim to a right under FOIA appear to have "merit." The documents produced pursuant to the 1980 request contain many redactions. Defendant has not advanced a justification for these decisions to refuse disclosure. At this stage, it is too early to distinguish as frivolous plaintiff's challenge to the propriety of those redactions.

The Priorities Act is the only direct guidance with which Congress provides the Court for determining the propriety of the timing of a response to a *Vaughn* index request. *See Knight Publishing Co. v. United States*, 608 F.Supp. 747, 750–51 (W.D.N.C.1984) ("due diligence-exceptional circumstances" extension of time test does not apply to timing of *Vaughn* index). Against the backdrop of the anti-delay policy of FOIA, district courts have balanced the same equities pertinent to the timing of a response to a FOIA document request in their determinations of the appropriate timing of a response to a *Vaughn* index request. *Knight Publishing Co. v. United States, supra; Cleaver v. Kelley, supra.*

The Court deems such an examination of the equities to be well-suited to satisfying the mandate to expedite de novo review.

### A. Vaughn Index for the 1980 Request

██ Plaintiff waited four years for a response to the 1980 request. He then received 984 severely redacted records without an accompanying justification for the non-disclosed portions. The files as they currently exist are of no use in his state court proceedings. As discussed in the previous section, material in these files may be helpful in those proceedings. Even though plaintiff delayed before requesting a *Vaughn* index, he still has an urgent need for the redacted materials.

A goal of the *Vaughn* index procedure is to " 'assure that a party's right to information is not submerged beneath government obfuscation and mischaracterization.' " *Donovan v. FBI*, 806 F.2d at 58 (quoting *Vaughn*, 484 F.2d at 826). If the completion of an index is delayed until August 1990, as defendant requests, then the FBI's choice to redact large portions of the 1980 request without explanation will result in abuse of plaintiff's FOIA right to de novo review of a denial of access to information. The Court orders the preparation of the *Vaughn* index to be expedited because FOIA requires the de novo review process to be expedited and plaintiff has demonstrated a particularly urgent need for such review of defendant's non-disclosure.

Defendant estimates that the creation of an index pertaining to the entire 1980 request will take 60 days and that creation of an index for the priority 1963–1970 portion of the 1980 request would take 32 days. Defendant is ordered to produce a *Vaughn* index for the 1963–1970 portion of the 1980 request within 32 days of the completion of the production of the 1963–1970 portion of the 1989 request. An index for the 1971–1980 portion of the 1980 request shall be processed in accordance with the FBI's "first in, first out" system because plaintiff lacks an urgent need for those documents.

### 2. Vaughn Index for the April 1989 Request

██ The Court agrees with the defendant that the motion for an index as to the April 1989 FOIA request is premature. Decisions by defendant to refuse to disclose portions of the material requested have not even been made yet. *See Knight Publishing Co. v. United States*, 608 F.Supp. at 749. The Court adds, as the court in *Knight* did following a similar decision, that if the FBI denies plaintiff access to portions of the 1989 request then the agency will have to submit a *Vaughn* index in a timely manner. *Id.*

IT IS, THEREFORE ORDERED that:

(1) the Defendant's motion to extend the time required to respond to Plaintiff's requests under the Freedom of Information Act is GRANTED IN PART AND DENIED IN PART;

(2) the Plaintiff's motion for a preliminary injunction is GRANTED IN PART AND DENIED IN PART;

(3) the Defendant, within 85 days of the receipt of this order, is to complete processing all documents from the 1963–1970 portion of Plaintiff's April 1989 request for documents relating to himself; first, the Defendant shall process the January 1965–October 1968 portion of these documents; after Defendant has prepared and served upon Plaintiff the January 1965–October 1968 portion of the April 1989 request, Defendant is to commence processing the documents from the periods January 1963–December 1965 and November 1968–December 1970.

(4) the Defendant, within 32 days of the completion of its response to the 1963–1970 portion of the April 1989 request, is to prepare and serve upon Plaintiff a *Vaughn* index of the 1963–1970 portion of the documents produced pursuant to the 1980 request.

(5) the Defendant is to work diligently and in good faith to respond to the 1971–1989 portion of the April 1989 request for documents and to prepare a *Vaughn* index for the 1971–1980 portion of the documents produced pursuant to the 1980 request for documents.

(6) the parties are to inform the Court after Defendant responds to Plaintiffs

April 1989 FOIA request, what action, if any, is sought with respect to Defendant's preparation of a *Vaughn* index with respect to the response to the April 1989 request.

SO ORDERED.