Anthony SUMMERS, Appellant,

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Appellee.**

No. 90–5082.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 4, 1991.

Decided Feb. 8, 1991.

James H. Lesar, Washington, D.C., for appellant.

Nathan Dodell, Sp. Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before RUTH BADER GINSBURG, SILBERMAN and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Anthony Summers, a published author and investigative journalist, is plaintiff-appellant in this Freedom of Information Act ("FOIA") suit against the United States Department of Justice, Federal Bureau of Investigation ("FBI"). Summers contests the district court's order granting a stay of proceedings and denying his request for immediate discovery. Because the district court's order is neither a final judgment nor an appealable interlocutory order, we lack authority to entertain Summers' pleas and therefore dismiss his appeal.

## I.

Summers is under contract with a publishing company to write a book about former FBI director J. Edgar Hoover. In January 1988, Summers submitted a FOIA request to the FBI seeking Hoover's appointment calendars, telephone logs, telephone message slips, and a waiver of all search fees and copying costs. In May 1989, the FBI denied Summers' waiver request. The FBI also indicated that documents responsive to Summers' request numbered some 17,100 pages. The agency sought a deposit of $427.50, or 25% of estimated copying costs, before processing the request. Summers filed an administrative appeal of the waiver denial, and in late October 1989, the FBI granted him a complete fee waiver.

On December 7, 1989, Summers commenced this action seeking an injunction ordering the FBI promptly to produce the requested information. Summers immediately sought expedited consideration of his suit, and asked the court to set a schedule for the production of requested documents. The schedule Summers proposed would have required the FBI to begin weekly releases of nonexempt materials by January 5, 1990, and to complete such releases by February 1, 1990.

The FBI opposed Summers' motion and sought a stay of proceedings under 5 U.S.C. § 552(a)(6)(C),[1] and *Open America v. Watergate Special Prosecution Force,* 547 F.2d 605 (D.C.Cir.1976).[2] In support of

---

**1.** That section provides: "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records."

**2.** *Open America* held that a stay under 5 U.S.C. § 552(a)(6)(C) was in order where (1) the vol-

its request for a stay, the FBI submitted the declaration of Angus B. Llewellyn, a supervisory agent in the FBI's FOIA and Privacy Act section. Llewellyn attested to the number and nature of FOIA requests handled by the FBI on a yearly basis, and described the FBI's procedures for processing such requests, including the agency's practice to process requests "in the order received." *See* Llewellyn Declaration, filed January 8, 1990, at 2, Appendix ("App.") at 22. Llewellyn reported that Summers' FOIA request had been assigned to a document examiner in November 1989, shortly after the FBI granted Summers a fee waiver. Because the examiner had thirty-two assignments ahead of Summers' request, in addition to a case subject to court-imposed deadlines, Llewellyn estimated that the processing of Summers' FOIA request would begin by February 1, 1991.

In response, Summers noticed the depositions of several FBI personnel, including Llewellyn and the document examiner assigned to process Summers' request. Summers also sought the production of documents on which Llewellyn had relied in his declaration; in addition, he asked for specific information on the thirty-two requests scheduled to be processed ahead of his. The FBI moved for a protective order to stay discovery, asserting the absence of any basis upon which to doubt Llewellyn's affidavit or the FBI's good faith. Summers opposed, citing the FBI's long delay in assigning his request to a document examiner during the pendency of Summers' waiver application. Summers also referred to widely varying processing times in two unrelated FOIA cases. He offered these references as support for his contention that the FBI was not processing cases in the order of receipt.

The FBI then filed a second declaration prepared by Llewellyn. This document reported that because Summers had been granted a full fee waiver, the order for processing his request would be based on the date the request was received by the FBI—January 11, 1988—rather than the date it was assigned to a document examiner, in November 1989. The attendant recalculation placed Summers' request eighth in line for processing, behind six requests received before his, plus the case subject to court order, and rendered it "conceivable that processing [might] begin earlier" than previously projected. *See* Second Llewellyn Declaration, dated February 22, 1990, at 6, App. at 34.

On March 2, 1990, the district court denied Summers' plea for a scheduled production of requested documents and refused to expedite consideration of his suit. The court stayed further proceedings, including all discovery, and ordered the FBI to submit status reports, at sixty-day intervals, on the progress made in processing Summers' request. *See Summers v. U.S. Department of Justice*, 733 F.Supp. 443, 444 (D.D.C.1990). Applying the standards framed by this court in *Open America, see supra* note 2, the district court found, based on Llewellyn's declarations, that the FBI had shown "exceptional circumstances" for the tardy pace of its FOIA compliance, *i.e.*, the large volume and extensive nature of FOIA requests the agency had received and was processing. *Summers*, 733 F.Supp. at 444; *see* 5 U.S.C. § 552(a)(6)(C), set out *supra* note 1. These circumstances, the district court concluded, coupled with the FBI's demonstrated exercise of "due diligence in responding to [Summers'] request," warranted a stay of the court action to "allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C); *see Summers*, 733 F.Supp. at 444.

The district court further stated that nothing before it showed "that the FBI [was] departing from its standard practice in processing the requests or attempting to avoid prompt disclosure." *Id.* The FBI's continued diligence would be secured, the court indicated, through the filing of regular status reports while the stay remained

---

ume of FOIA requests to the agency vastly exceeded that anticipated by Congress, (2) the agency's resources were inadequate to deal with the deluge within the time limits set by the Act, and (3) the agency (FBI) was exercising due diligence in processing requests on a first in, first out basis. *See Open America*, 547 F.2d at 616.

pending. *Id.* Finally, the court stated that Summers had failed to demonstrate "an exceptional need or urgency in processing his FOIA requests." *Id.* The district court noted two FOIA cases, one a related action by Summers, in which district judges in this circuit had held that "publishing deadlines do *not* necessitate expedited treatment"; the court declined "to depart from these other rulings." *Id.* (emphasis in original) (citing *Summers v. U.S. Department of Justice,* 729 F.Supp. 1379 (D.D.C.1989); *Mangold v. Central Intelligence Agency,* C.A. No. 88–1826, 1989 WL 229396 (D.D.C. May 3, 1989)).

## II.

 The district court's stay of proceedings under *Open America* is not a "final decision" appealable under 28 U.S.C. § 1291. Rather than conclusively determining the merits of Summers' FOIA suit, "the order ensures that litigation will continue in the District Court." *See Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 275, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988).

Summers argues that the nonfinal order is reviewable under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). To fall "within the 'small class' of decisions excepted from the final judgment rule by *Cohen,* the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). In *Open America,* the district court had granted a FOIA requestor's demand under *Vaughn v. Rosen,* 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39

L.Ed.2d 873 (1974), for the FBI's "detailed justification, itemization, and indexing of the documents within thirty days." *Open America,* 547 F.2d at 608. In a brief footnote citing *Cohen,* this court held the order immediately reviewable, finding that the district court had "settled conclusively the position of the parties under 5 U.S.C. § 552(a)(6)(C) (1970), whose construction, in light of the circumstances in this and other cases, is too important to be denied review." *Id.* at 608 n. 8.

Comparison of the district court action reviewed in *Open America* with the stay order before us indicates why this case does not fit within the *Cohen* doctrine's very limited exception to the firm final judgment rule. In *Open America,* the district court directed the agency to process immediately the plaintiff's FOIA request and clearly did not contemplate future revision or modification of its order. *Open America,* 547 F.2d at 608. In this case, by contrast, the district court required the FBI to file periodic status reports on its progress in processing Summers' FOIA request. The stay order thus ranks as one "subject to revision in the District Court"; it therefore does not "conclusively determine" the issue of court-imposed time constraints on the FBI's processing of Summers' request.[3] *See Coopers & Lybrand,* 437 U.S. at 469, 98 S.Ct. at 2458; *see also Gulfstream Aerospace,* 485 U.S. at 277–78, 108 S.Ct. at 1137–38.

 Summers alternatively argues that the stay order had the practical effect of denying injunctive relief and is therefore appealable under 28 U.S.C. § 1292(a)(1). Here, too, we resist erosion of the final judgment rule. To fit the "equivalent to the refusal of an injunction" bill, the targeted district court order must have grave, perhaps irreparable, consequences. *See Carson v. American Brands, Inc.,* 450

---

**3.** During the pendency of this appeal, the FBI has filed with the district court the periodic status reports that the district court ordered. According to the government's undisputed assertions, a document examiner began to process Summers' FOIA request on May 7, 1990 and, as of November 9, 1990, the FBI had provided to Summers a total of 6,625 pages in four interim

releases. *See* Brief for Appellee at 6–7. In light of our holding that the order Summers has tendered to us is interlocutory and not immediately appealable, however, we do not reach the government's argument that the already launched and continued processing of Summers' FOIA request renders this appeal moot.

U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981) (quoting *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955)). Summers urges in this regard the impending, publisher-set deadline that he will miss absent expedited treatment of his FOIA request. In accord with the district court, we do not rank such a deadline as a cause so extraordinary as to warrant our treatment of the order before us as an immediately reviewable denial of an injunction. *Compare Summers v. U.S. Department of Justice*, 733 F.Supp. at 444 (citing *Summers v. U.S. Department of Justice*, 729 F.Supp. 1379 (D.D.C.1989)) and *Mangold v. Central Intelligence Agency*, C.A. No. 88–1826 (D.D.C. May 3, 1989)) *with Mayock v. INS*, 714 F.Supp. 1558, 1567–68 (N.D.Cal.1989) (FOIA requests of aliens with urgent need for information in pending deportation or exclusion proceedings deserve priority) *and Cleaver v. Kelley*, 427 F.Supp. 80, 81 (D.D. C.1976) (criminal defendant, facing possible "loss of freedom or life" in imminent state prosecution, demonstrated "exceptional and urgent need to obtain any and all information that could prove exculpatory"). *See also Open America*, 547 F.2d at 616 (only "exceptional need or urgency" warrants agency departure from handling FOIA requests "on a first-in, first-out basis").

Summers ultimately maintains that we must immediately review the district court's order under the *Cohen* doctrine, or the "equivalent to the refusal of an injunction" line of cases, because of the importance of the issue he presents, and its probable mootness absent an interlocutory appeal. He first asserts that the FBI's decision to grant him a full fee waiver constitutes a determination that dissemination of the requested information is in the public interest. *See* 5 U.S.C. § 552(a)(4)(A). He then advances the novel theory that requestors, such as scholars and journalists, who are granted fee waivers must be placed at the top of the FOIA requests-in-process list once they demonstrate a need for prompt disclosure to secure dissemination of information to a large public. Here,

Summers asserts, his publishing deadline demonstrates the requisite need.

We point out in this regard that Summers was not as boxed-in by the final judgment rule as his submissions suggest. He left untried two routes to this court to challenge the application of *Open America* to his case or to raise his fee waiver priority theory as an important issue deserving immediate review. Pursuant to 28 U.S.C. § 1292(b), Summers could have sought the district court's certification of its interlocutory order and this court's permission to appeal. Alternatively, he could have submitted to district court dismissal of his suit to compel agency action, and then appealed the final judgment as of right under 28 U.S.C. § 1291. *See Crooker v. United States Marshals Service*, 577 F.Supp. 1217 (D.D.C.1984) (dismissal of FOIA complaint upon government's showing that request was being processed in good faith and with due diligence in order of receipt, in conformity with standards of *Open America*).

Summers elected to maintain his lawsuit as an incomplete adjudication in the district court, thereby gaining the benefit of district judge supervised sixty-day status reports from the FBI. But the opportunity to pursue an appeal and remain in the district court simultaneously is one our federal court system tightly reserves for extraordinary cases. Summers' case, as currently postured, is not such an instance.

### CONCLUSION

Because the stay order entered by the district court under *Open America* is a nonfinal order that is not currently subject to interlocutory appellate review, this appeal is dismissed for lack of appellate jurisdiction.[4]

*It is so ordered.*

---

4. The government's motion objecting to new

matter contained in Summers' reply brief is

dismissed as moot. As the government acknowledges, nothing impedes Summers from bringing the information he placed in his reply brief to the attention of the district court.