Mary Jane FREEMAN, Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE (FED-
ERAL BUREAU OF INVESTIGA-
TION), Defendant.

No. 92 Civ. 2076 (MGC).

United States District Court,
S.D. New York.

June 2, 1993.

James H. Lesar, Washington, DC, Barbara
Tsao, New York City, for plaintiff.

Roger S. Hayes, U.S. Atty., S.D.N.Y. by
Diana Hassel, Asst. U.S. Atty., for defendant.

## OPINION AND ORDER

CEDARBAUM, District Judge.

Plaintiff sues under the Freedom of Infor-
mation Act ("FOIA"), 5 U.S.C. § 552 as
amended, for expedited processing of FBI
records relating to a deceased Iranian citi-
zen, Cyrus Hashemi, and various other mat-
ters related to the "October Surprise."[1]
Plaintiff alleges that she and a colleague,
Edward Spannaus, requested these docu-
ments to present to Congress[2]. Spannaus, a
journalist, also intends to use this informa-

---

1. The "October Surprise" refers to allegations
that the 1980 Reagan–Bush election team con-
spired with Iranian leaders to delay the release
of 53 American hostages until after the election
in exchange for United States arms shipments.

2. In papers submitted in opposition to defen-
dant's motion, plaintiff argued that she requested

this material to present to a Congressional Com-
mittee investigating the "October Surprise." At
oral argument, plaintiff conceded that her re-
quest was made before this Committee came into
existence and that her purpose in requesting this
information was to inform Congress generally.
(Tr. at 23.)

tion in connection with an article he is writing. Defendant has moved for a stay of further proceedings pursuant ·to § 552(a)(6)(C) of FOIA to allow additional time for the completion of the processing of plaintiff's request. For the reasons that follow, defendant's request for a stay is granted.

## BACKGROUND

On May 2, 1991 plaintiff made a FOIA request to the New York field office of the Federal Bureau of Investigation for records pertaining to the "October Surprise." On May 20, 1991 the New York office acknowledged that it had received plaintiff's request on May 7. (5/11/92 Turner Decl., Ex. A.) Plaintiff's request was transferred ·to FBI Headquarters ("FBIHQ") in accordance with defendant's policy of referring to FBIHQ requests made directly to field offices. However, plaintiff's request was not assigned a processing number until August 23, 1991. This delay occurred because the clerk who responded to plaintiff's request mistakenly told plaintiff that she needed to provide proof of Cyrus Hashemi's death. Defendant previously had processed documents relating to Hashemi, and therefore knew that he was dead.[3] To ensure the most efficient and consistent processing, plaintiff's request was assigned to a paralegal who was already processing records related to the "October Surprise." (12/21/92 Turner Decl. ¶ 8.) On September 13, 1991 plaintiff was informed that her request had been transferred to FBIHQ and that it would take approximately one year for the entire file to be processed. (5/11/92 Turner Decl. ¶ 16(F).) Although plaintiff had requested the field office file on Hashemi, she was advised that the processing of a FOIA request for the Hashemi file located at FBIHQ was near completion, and that if plaintiff requested that file, it would be sent to her within a short period of time. On November 25, 1991, defendant released to plaintiff 1,296 pages from the FBIHQ file on Hashemi. (Id. at ¶ 16(I).) As of May 11, 1992, defendant estimated that the remainder of plaintiff's request, materials located at the New York field office which had not been sent to FBIHQ, would be processed by October 1, 1993. (Id at ¶ 19.)

## DISCUSSION

FOIA requires that an agency determine within 10 days whether to comply with a request·and immediately notify the requester of that determination. 5 U.S.C. § 552(a)(6)(A). Once an agency has determined that it will comply with a request for records, the agency must make them "promptly available" to the requester. 5 U.S.C. § 552(a)(6)(C).

Defendant argues that it is entitled to a stay because it faces an extraordinary number of FOIA requests to which it responds with due diligence, and that plaintiff has not demonstrated an exceptional need for the information requested that would justify expediting her request.

5 U.S.C. § 552(a)(6)(C) provides:

> If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.

In interpreting the extraordinary circumstances-due diligence provision, the D.C. Circuit has held that an extension is warranted where:

> an agency ... is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests ... [D]ue diligence of the agency to comply with all lawful demands under the Freedom of Information Act in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance with the Act.

*Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C.Cir.1976).

---

**3.** The FBI cannot release information about third parties without proof of death or a notarized authorization. (5/11/92 Turner Decl. ¶ 16(B)).

*Cf. Exner v. FBI,* 542 F.2d 1121 (9th Cir. 1976).

Some district courts have applied more stringent standards for granting extensions than those set in *Open America. See Mayock v. INS,* 714 F.Supp. 1558, 1565–66 (N.D.Cal.1989), *rev'd,* 938 F.2d 1006 (9th Cir. 1991) (summary judgment improper because district court failed to consider government's evidence in its entirety); *Ettlinger v. FBI,* 596 F.Supp. 867 (D.Mass.1984); *Hamlin v. Kelley,* 433 F.Supp. 180 (N.D.Ill.1977). However, agencies confronting an overwhelming number of requests generally have been given additional time to respond to them. *See Ferguson v. FBI,* 722 F.Supp. 1137, 1140 (S.D.N.Y.1989).

In this District, Judge Patterson has addressed the circumstances in which the government's time to respond to FOIA requests should be extended. In *Ferguson,* 722 F.Supp. at 1137, the plaintiff requested documents to use in proceedings to vacate his criminal conviction and to dismiss a pending indictment. Judge Patterson held that the FBI had not satisfied the due diligence prong of the extension test because it had not considered the immediacy of plaintiff's need in scheduling its response. *Id.* at 1143. However, the court refused to require out-of-order processing of other documents for which there was not a similarly urgent need. *Id.* at 1144.

As of March 31, 1992, defendant had received 7500 requests for information pursuant to FOIA and the Privacy Act, 5 U.S.C. § 552a, and had a backlog of approximately 10,000 requests. (5/11/92 Turner Decl. ¶ 6.) In recognition of the increased workload, defendant repeatedly has made requests to the Office of Management and Budget for additional personnel and has attempted to streamline its processing procedures. (*Id.* at ¶ 8.) After reviewing the affidavits submitted by the parties, I am satisfied that defendant is doing the best it can do within its physical limitations to process all requests in a timely manner.

When a FOIA or Privacy Act request is received by FBIHQ, it is assigned a number which establishes the order of processing; both types of requests are placed on the same line. (12/21/92 Turner Decl. ¶ 5.) Plaintiff argues that it is improper for defendant not to distinguish requests made under FOIA from those made under the Privacy Act when assigning processing numbers because only FOIA has administrative deadlines requiring prompt disclosure.

Defendant responds that because documents releasable pursuant to FOIA may not be withheld as exempt under the Privacy Act, it processes virtually all Privacy Act requests under FOIA. Defendant handles Privacy Act and FOIA requests as interchangeable based on its understanding that this practice was mandated by Congress when it amended the Privacy Act in 1984 to include the provision now designated as 5 U.S.C. § 552a(t)(2).

Defendant points to the following language in the Report of the House Committee on Government Operations:

> With the enactment of the Privacy Act amendment ... individuals will continue to be able to make requests for records about themselves using the procedures in either the Privacy Act, the FOIA, or both. Agencies will be obliged to continue to process requests under either or both laws. Agencies that had made it a practice to treat a request made under either law as if the request had been made under both laws should continue to do so. Information that is exempt under the FOIA but not under the Privacy Act will have to be disclosed when requested under the Privacy Act. Information that is exempt under the Privacy Act but not under FOIA will have to be disclosed when requested under FOIA.

H.R.Rep. No. 726 Pt. 2, 98th Cong., 2d Sess. 16–17, *reprinted in* 1984 U.S.C.C.A.N. 3741, 3790–91.

Defendant has submitted a declaration that it processes requests on a FIFO basis and that requests are processed out of order when the requester has an exceptional need for the information. (11/24/92 Turner Decl. ¶ 11.) Plaintiff has not shown otherwise.

■ The fact that plaintiff's request was referred to FBIHQ for processing does not establish a departure from FIFO because defendant routinely refers to FBIHQ requests made directly to field offices. In this

manner, defendant applies FIFO on a national basis. Plaintiff has not shown that defendant's four-month delay in assigning her request a place in line under the national FIFO system is intrinsic to defendant's system of referring requests to FBIHQ. Moreover, plaintiff has not shown an exceptional need for the information requested which would require defendant to process her request out of turn. The publication date of a projected article has been held not to constitute exceptional need. *Lisee v. CIA,* 741 F.Supp. 988 (D.D.C.1990); *Summers v. U.S. Dept. of Justice,* 733 F.Supp. 443 (D.D.C.1989), *appeal dismissed,* 925 F.2d 450 (D.C.Cir.1991). As to plaintiff's desire to submit the material to Congress, Congress has alternative means of obtaining this information. Plaintiff's desire to inform the public, while commendable, does not constitute an exceptional need. Since almost every request can be linked to such a desire, granting expedited treatment for that purpose would allow the exception to swallow the rule.

Defendant also exhibited due diligence in responding to plaintiff's request by releasing approximately 1300 pages of information about Cyrus Hashemi as soon as it had processed these documents rather than withholding them until it had completed the processing of plaintiff's entire request. *See Open America,* 547 F.2d at 618 (Leventhal, J., concurring).

Finally, moving plaintiff's request to the front of the line would displace other requests, some of which may be for information which is more urgently needed. Absent a showing of exceptional need on the part of plaintiff, it is unfair to prejudice other requesters. *See Caifano v. Wampler,* 588 F.Supp. 1392, 1394 (N.D.Ill1984).

Defendant has established that it faces exceptional circumstances in that it has a substantial backlog even though it processes requests as quickly as possible within its financial ability. Defendant also has shown that it processes requests with due diligence; it processes FOIA requests on a FIFO basis except where there is an urgent need for the information. Plaintiff has failed to demonstrate an urgent need for the information, and FIFO appears to be the fairest method of processing requests that are not urgent.

Plaintiff is entitled, however, to a place in the line based on the date her request was first received at the New York field office, May 7, 1991. Defendant states that if plaintiff's request had been assigned a processing number on May 7 rather than August 23, she would have received a number which was approximately 4,000 lower than the number she received. (12/21/92 Turner Decl. ¶ 7.) Defendant maintains that because of the previous responsibilities of the paralegal to whom plaintiff's request was assigned, a lower number would not have affected the timing of the processing of plaintiff's request. *Id.* If plaintiff's request had been assigned a processing number in early May, it is possible that her request would have been assigned to a different paralegal with a lighter workload. Defendant points out that plaintiff's request was assigned to a paralegal who was already involved in processing other records relating to Hashemi. *Id.* at ¶ 8. However, it is not clear that the paralegal already had begun processing those records before May 7, 1991, and therefore would have received plaintiff's request if it had been assigned a processing number on that date. Accordingly, to assure that plaintiff receives her rightful place in line as of the date on which her request was received at the New York field office, defendant is instructed to determine which paralegal would have been assigned plaintiff's request on May 7, 1991 and to have that paralegal process plaintiff's request before processing any requests that were assigned to that paralegal after May 7, 1991.

### CONCLUSION

For the foregoing reasons, defendants' motion for a stay is granted. Defendant is directed to process plaintiff's request with due diligence and in accordance with the instructions of this court. Defendant is also directed to submit progress reports to the court every 60 days.

SO ORDERED.