**Eyal KATZMAN, Plaintiff,**

v.

**CENTRAL INTELLIGENCE AGENCY, Defendant.**

No. 94–CV–5239 (JS).

United States District Court, E.D. New York.

Nov. 8, 1995.

Eyal Katzman, Kew Gardens, NY, pro se.

United States Attorney's Office, Eastern District of New York by Scott Dunn, Asst. U.S. Atty. Brooklyn, NY, for Defendant.

### MEMORANDUM AND ORDER

SEYBERT, District Judge:

This is an action brought by plaintiff Eyal Katzman, proceeding *pro se*, under the Freedom of Information Act, U.S.C. § 552 ("FOIA"), to compel the Central Intelligence Agency ("CIA") to furnish certain information that was the subject of a prior administrative request. Pending before the Court is the CIA's motion to dismiss this action. For the reasons discussed herein, the defendant's motion is denied.

### BACKGROUND

On January 27, 1992, Paul Greenfield, plaintiff's attorney, filed a FOIA request with the CIA seeking the production of all files pertaining to and on behalf of the plaintiff. On February 11, 1992, the CIA replied to this letter by requesting further information before a search for documents could be conducted. On March 19, 1992, plaintiff's attorney furnished the requested information. The CIA acknowledged receipt of this information by letter dated April 23, 1992. Thereafter, on June 23, 1992, John H. Wright, the CIA's Information and Privacy Coordinator, sent a letter to plaintiff's attorney stating that no records were found in response to this search request. This letter, however, incorrectly identified the subject of the search as Mr. Greenfield (plaintiff's attorney), and not the plaintiff.

Plaintiff argues that the CIA did not conduct a thorough search of its records, and that therefore the agency's actions were arbi-

trary and capricious. Plaintiff cites the above-referenced mistake in the June 23, 1992 letter in support of his position. In addition to seeking the production of these files, plaintiff seeks an injunction enjoining the CIA from destroying any files that pertain to him. Plaintiff also requests the Court to issue a written finding concerning the alleged arbitrary and capricious conduct of the CIA as a predicate to a subsequent proceeding.

Defendant now moves to dismiss this action as moot because the CIA was unable to locate any relevant records. Defendant states that Mr. Wright informed the plaintiff, through a letter to Mr. Greenfield dated January 11, 1995, that the error in the June 23, 1992 letter was administrative and that a thorough and diligent record search was conducted on the plaintiff which produced no records. Furthermore, defendant submits a declaration of Mr. Wright to explain the procedures that the CIA followed in processing the plaintiff's search request. It should be noted, however, that the defendant does not cite a specific federal procedural rule as the basis for its motion to dismiss, and moreover, does not cite any case law in support of its position. Since the defendant has submitted both Wright's affidavit and the letter dated January 11, 1995 in support of its application, the Court will construe this motion as seeking summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### DISCUSSION

Under the law of the Second Circuit, a district court must weigh the following considerations in evaluating whether to grant a motion for summary judgment with respect to a particular claim:

> First, summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Second, the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.... Finally, the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue-resolution.

*Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (internal case citations omitted). In evaluating the above considerations, a court must be mindful of whether the purported factual dispute is material, because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Under the FOIA, federal government agencies are required to make certain classes of information available to the public upon request. *See* 5 U.S.C. § 552(a). To enforce FOIA provisions, federal district courts may "enjoin the agency from withholding agency records and ... order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Thus, "[u]nder 5 U.S.C. § 552(a)(4)(B) federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" *Kissinger v. Reporters Comm.,* 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980). "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *U.S. Dep't of Justice v.*

*Tax Analysts,* 492 U.S. 136, 142, 109 S.Ct. 2841, 2846–47, 106 L.Ed.2d 112 (1989).

 In a FOIA action, the facts are viewed in a light most favorable to the requester of information. *See Becker v. IRS,* 34 F.3d 398, 405 (7th Cir.1994). Indeed, it is the agency that bears the burden to establish that the materials sought have not been improperly withheld. *See Tax Analysts,* 492 U.S. at 142 n. 3, 109 S.Ct. at 2847 n. 3. Where, as in the instant case, the plaintiff alleges that the agency has improperly withheld documents through its failure to locate them, the agency's burden is to establish that it conducted an adequate search that failed to produce the requested records. *See Perry v. Block,* 684 F.2d 121, 127 (D.C.Cir.1982). "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese,* 790 F.2d 942, 956 (D.C.Cir.1986). Furthermore, a search is adequate if it is "reasonably calculated to discover the requested documents." *Safe-Card Servs. v. SEC,* 926 F.2d 1197, 1201 (D.C.Cir.1991).

Should a court find that the agency has sustained its burden of demonstrating that it conducted a reasonable search that failed to uncover any relevant documents, the burden shifts to the plaintiff to make a showing of agency bad faith sufficient to impugn the agency's affidavits. *See Carney v. U.S. Dep't of Justice,* 19 F.3d 807, 812 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994).

In the instant case, defendant CIA has submitted one declaration, that of John H. Wright, the CIA's Information and Privacy Coordinator, to establish that a reasonable search was conducted. In his affidavit, Wright testifies that he is responsible for directing the search of CIA records systems pursuant to the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, as amended, 5 U.S.C. § 552a, and that his statements therein are based upon his own "personal knowledge, information made available to [him] in [his] official capacity, the advice of the CIA's Office of General Counsel, and conclusions reached in accordance therewith." Wright Aff. ¶ 2. Upon discussing his familiarity with

Mr. Katzman's records request as well as this litigation, Wright describes the CIA's procedures for the processing of FOIA and Privacy Act requests.

I will now explain CIA's administrative processing of FOIA and Privacy Act requests to fully assure Plaintiff that his request was processed in good faith. The Information, Privacy, and Classification Review Division (IP & CRD) is the initial reception point in the Agency for all FOIA and Privacy Act requests received by CIA. With respect to FOIA and Privacy Act requests, experienced personnel in IP & CRD determine which components of the CIA might reasonably be expected to possess records that may be responsive to each request. IP & CRD then forwards copies of the requester's letter to each component with instructions that a search be conducted for any responsive documents. At that time, the components conduct searches among indices that might possibly have any information relating to the subject of the request. Component personnel responsible for carrying out these searches are professionals who conduct all CIA searches, whether they are for another component of the Agency, the Director of Central Intelligence, or in response to a FOIA or Privacy Act request.

*Id.* ¶ 7. According to Wright, on April 27, 1992, the CIA conducted a records search of the various CIA components determined to be the most likely to have records responsive to the plaintiff's request, to wit, (i) the Directorate of Operations, which is the CIA component responsible for the clandestine collection of foreign intelligence information from human sources; (ii) the Directorate of Intelligence, which is the CIA component responsible for analyzing and forecasting issues and world events of importance to U.S. policy makers; and (iii) the Directorate of Administration, which is responsible for the general administrative functions of the agency. *See id.* ¶ 8. Wright further testifies that upon making reasonable efforts to identify, retrieve and process the records responsive to the plaintiff's request, the components responded as follows:

[i] The Directorate of Operations searched all of its records systems that might have an interest in or record on the Plaintiff and located no responsive records.[1]

[ii] The Directorate of Administration searched its record systems and found no responsive records.

[iii] The Directorate of Intelligence reviewed Plaintiff's request and determined that it had no responsive records.

*Id.* ¶ 9.

■ The Second Circuit Court of Appeals has held that "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search ... are sufficient to sustain the agency's burden." *Carney,* 19 F.3d at 812. On an agency's motion for summary judgment, "[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed ...; there is no need for the agency to supply affidavits from each individual who participated in the actual search." *Id.* at 814 (citations omitted). In addition, "[a]ffidavits submitted by an agency are accorded a presumption of good faith." *Id.* at 812 (internal quotations omitted).

An agency's affidavits will be inadequate, however, if they are conclusory and not relatively detailed. *See Weisberg v. United States Dep't of Justice,* 627 F.2d 365, 370 (D.C.Cir.1980). Accordingly, the affidavits should "identify the searched files and describe at least generally the structure of the agency's file system" which renders any further search unlikely to disclose additional relevant information. *Church of Scientology v. IRS,* 792 F.2d 146, 151 (D.C.Cir.1986), *aff'd,* 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987).

■ Even upon according deference to the presumption favoring the reliability of agency affidavits, the Court finds that the defendant CIA has failed to meet its burden of

establishing the thoroughness of its procedures. Although Wright testifies that he is responsible for directing the search of CIA records, he fails to elaborate upon the extent of his involvement with respect to the plaintiff's search request. Wright moreover explains that a search for records pertaining to the plaintiff was conducted in the three components of the CIA that would have been responsive: the Directorate of Operations, the Directorate of Administration, and the Directorate of Intelligence. *Carney* suggests, however, that "[a]n affidavit from [the] agency employee responsible for *supervising* [the] FOIA search" should be obtained. *Carney,* 19 F.3d at 814 (emphasis added). Indeed, in *Carney,* declarations were provided by supervisory personnel in each of the agency subdivisions that processed the plaintiff's FOIA request. *See id.* at 813.

The Court is mindful that, in contrast to *Carney,* the agency is not claiming an exemption to the disclosure of records in its possession. The Court also has considered the agency's letter dated January 11, 1995, which purports that a proper search of records was conducted with respect to the plaintiff. Nevertheless, in view of the processing error made by the agency in reporting that the search of records had been conducted on the plaintiff's attorney, the Court is unable to conclude at this juncture of the litigation that "the adequacy of the search [is no longer] in doubt." *Weisberg,* 627 F.2d at 371. In his affidavit dated January 13, 1995, Wright testifies, without further elaborating upon the specifics of the search with respect to the plaintiff, that "[o]n 27 April 1992 the CIA initiated a records search of the various CIA components determined to be the most likely to have records responsive to the Plaintiff's request—the Directorate of Operations ... the Directorate of Intelligence ... and the Directorate of Administration." Wright Aff. ¶ 8. In view of the letter of June 23, 1992 which identifies this search as having been

---

1. The plaintiff contends that Wright's statement that no responsive records were located by the Directorate of Operations is incomplete, because under 50 U.S.C. § 431, which exempts certain CIA operational files from disclosure, such files could not be accessed in any event. In view of the Court's denial of the defendant's motion for summary judgment, the Court finds it unnecessary to address this matter at this juncture of the litigation. The defendant is directed, however, in any subsequent motion for summary judgment that it may bring, to set forth clearly whether it relies upon this exemption as the basis for the Directorate of Operations' response.

conducted on Paul Greenfield (plaintiff's attorney), the Court regards a genuine issue of fact to exist concerning the thoroughness of the agency's search procedures.

Accordingly, the Court directs the CIA to furnish affidavits from supervisory personnel in each of the three components at issue who personally oversaw the processing of the plaintiff's search request. To be sufficient, each affidavit, among other things, must specify whether the referenced search commenced on April 27, 1992 was conducted with respect to the plaintiff, as opposed to his attorney.[2]

### CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is denied without prejudice to reapply, by submission of affidavits consistent herewith within 120 days of the date of this Memorandum and Order.

SO ORDERED.

---

**2.** In view of the ruling herein, the Court has no occasion to consider the plaintiff's request to stay this action pending the resolution of a prior FOIA action brought by him against the Federal Bureau of Investigation ("FBI").