**Norman Carl RABIN, Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF STATE, CENTRAL INTELLIGENCE AGENCY, John M. Deutch, in his Official Capacity as Director of the Central Intelligence Agency and Individually, and The United States of America, Defendants.**

**No. 95 CV 4310(ADS).**

United States District Court, E.D. New York.

Oct. 7, 1997.

MEMORANDUM OF DECISION
AND ORDER

SPATT, District Judge:

According to the plaintiff, he has been "targeted" by "United States satellite–based assault," "surveillance" and "imprisonment" from 1986 to present. (Plaintiff's Memorandum of Points and Authorities). Additionally, for reasons that need not be elaborated upon, the plaintiff believes that this "satellite" activity dovetails with plots between the United States and the former Soviet Union to free Jewish dissidents in 1986 and 1987, and with Iraq's invasion of Kuwait on August 2, 1990.

This matter is before the Court on the plaintiff's *pro se* motion to compel the defendant government agencies to expedite their processing of requests, made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 as amended, for documents allegedly evidencing the above-described government conspiracies. Also before the Court are the defendant Central Intelligence Agency's ["CIA" or "the Agency"] motion to dismiss the portion of the complaint which seeks to compel the production of documents which are not in the agency's possession, as well as the defendant United States Department of State's ["State Department" or "the Department"] motion to stay the proceedings until it has fully processed the plaintiff's FOIA request.

## I.  FACTUAL BACKGROUND

### A.  The CIA FOIA Request

Apparently hoping to gather information that would support his contention of a government conspiracy against him, the plaintiff made a FOIA request to the CIA, by letter dated September 14, 1994, seeking the following four categories of documents: (1) "materials corresponding to Treason Charges, brought against U.S. Intelligence ... in January 1986, upon their conducting satellite assault operations against [the plaintiff]" ("Item One"); (2) "The agreement ... announced by the Reagan Administration [which lead to the] release of Anatoly B. Shcharansky from the USSR" ("Item Two"); (3) "Materials concerning any U.S. communi-

Norman Carl Rabin, Plainview, NY, pro se.

Zachary W. Carter, United States Attorney, Brooklyn, NY by Phillip J. Miller, Assistant United States Attorney, for Defendants.

cations ... which preceded ... the Moscow[ ][E]migration [O]ffice giving permission, on [ ] or about [ ] Sept[ember] 7, 1987, to [six] Soviet Jewish dissidents to leave the Soviet Union" ("Item Three"); and (4) "Materials concerning U.S. communications ... which preceded Iraq's Aug[ust] 2, 1990 invasion of Kuwait, and which informed Iraq ... of ... special dates upon which Iraq might consider crossing the border of Kuwait to seize or occupy some amount of land" ("Item Four"). (12/28/95 Strickland Decl., Ex. 1).

By letter dated November 8, 1994, the CIA acknowledged that it had received the plaintiff's FOIA request (12/28/95 Strickland Decl., Ex. 4). With respect to Item One of the request, the CIA letter noted that the agency conducted separate searches in 1990 and 1992 for information indexed to the plaintiff's name in response to requests for information on himself under the Privacy Act of 1974, 5 U.S.C. § 552a. (12/28/95 Strickland Decl., ¶¶ 6–7). The letter advised plaintiff that the first search yielded no records, and that the second search located only the plaintiff's earlier letter to the agency. Since Item One of the FOIA request would have been located during the earlier Privacy Act searches if it existed, the letter stated, the agency determined that it would not conduct a third search.

Further, the CIA letter informed the plaintiff that his requests for Items Two and Three—regarding the former Soviet Union's release of Anatoly Shcharansky and other Jewish dissidents—should be directed to the Department of State. The letter also explained that Item Four did not "reasonably describe the records sought" and therefore was considered "unsearchable" within CIA records systems. The CIA letter did not notify the plaintiff of his right to an administrative appeal of this determination, and no such appeal was taken.

## B. The State Department FOIA Request

Several months later, by letter dated March 9, 1995, the plaintiff wrote to the State Department, seeking the same four items described in the CIA FOIA request. (3/20/96 Sheils Decl., Ex. 1). In a reply dated March 29, 1995, the State Department notified the plaintiff that it had begun processing his request for Items Two and Three. (3/20/96 Sheils Dec., Ex. 4). The response noted, however, that the State Department would not search for Item One, because even if such documents existed, they would be maintained by the CIA. The letter also advised the plaintiff that it could not process Item Four because it did not "clearly and reasonably describe" the materials being sought and, hence, was "unsearchable" in the agency's records systems.

Subsequently, by a follow-up letter to the State Department dated May 15, 1995, the plaintiff requested expedited processing of his request for Items Two and Three. With respect to Item Four of his request, the plaintiff's follow-up letter clarified that the "special dates" mentioned in Item Four of his request related to communications from the United States Government to Iraq, from May 1990 through August 1990, stating, in sum and substance, that the plaintiff "is our symbol of Soviet Jewry and/or human rights abuse who will be flying to Israel on August 1–2, 1990. Perhaps you might consider doing something on that day? Or perhaps you might consider crossing the border of Kuwait and taking or seizing or occupying some amount of land on that day?" (3/20/96 Sheils Decl., Ex. 5).

By a reply dated May 23, 1995, the Department advised the plaintiff that his request for expedition was denied because it did not meet the criteria set forth in its rules, 22 C.F.R. § 171.12(b), namely, that "an individual's life or personal safety would be jeopardized by the Department's failure to process a case immediately or that substantial due process rights of the requestor would be impaired and that the information sought is not otherwise available." (3/20/96 Sheils Decl., Ex. 6). The letter also advised the plaintiff of his right to an administrative appeal of this determination to the Chief of the Requests Management Division of the State Department. The letter did not state whether the agency had reached a determination regarding plaintiff's effort to clarify his request for Item Four.

By letter dated May 31, 1995, the plaintiff filed an administrative appeal of the denial of his request for expedited determination of his FOIA request, which the agency denied. (3/20/96 Sheils Decl., Ex's. 7 and 8).

On October 23, 1995, the plaintiff filed a civil suit in this Court seeking declaratory and injunctive relief against the State Department and CIA compelling the agencies to provide him with the materials cited in his FOIA requests.

## II. THE PARTIES' POSITIONS

### A. The Plaintiff's Position

#### 1. *The CIA FOIA Request*

At the outset, the plaintiff seemingly concedes that the CIA's referral of his requests for items Two and Three to the State Department was proper. Accordingly, that aspect of the agency's determination is not before the Court. (Plaintiff's Unpaginated Complaint, ¶¶ 115–16).

With regard to his request for Item One, the plaintiff asserts that the CIA's prior searches pursuant to Privacy Act requests for information in the plaintiff's name would not necessarily have yielded documents of satellite assaults against the plaintiff, and accordingly, that the Agency should be compelled to initiate another search. (Plaintiff's Unpaginated Complaint, ¶ 119). In addition, the plaintiff challenges the CIA's determination that it is impossible to conduct a search for Item Four within the Agency's record systems (Plaintiff's Unpaginated Complaint, ¶ 122).

#### 2. *The State Department FOIA Request*

The plaintiff urges this Court to compel the State Department to expedite its processing of that portion of his request which it determined it will respond to, namely, Items Two and Three, as well as Item Four as clarified in the plaintiff's follow–up letter to his initial FOIA request. According to the plaintiff, he is deserving of accelerated treatment because the documents sought will provide him with "notice" that he is being held a "satellite prisoner of [the United States Government's] multiple satellites' monitoring and assault" against him and, hence, will provide him with the critical evidence he needs to prevail in a prospective lawsuit to stop this "torture."

The plaintiff does not challenge the State Department's referral of his request for Item One to the CIA. Thus, the Court will not consider that aspect of the Department's determination.

### B. The Defendants' Positions

#### 1. *Exhaustion of Administrative Remedies*

While in their answer to the complaint, the defendants mention a defense based upon the plaintiff's failure to exhaust administrative remedies, since the issue was not raised in a motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court declines to rule on this issue.

#### 2. *The CIA's Position*

The defendant CIA moves to dismiss the portion of the complaint relating to Item One of the FOIA request on the ground that the agency was unable to locate any pertinent records. In support of this contention, the defendant submits the declaration of Lee S. Strickland, the Information and Privacy Coordinator for the CIA, who states that in 1990 and 1992, the agency conducted separate searches for documents relating to the plaintiff in response to Privacy Act requests, and that those efforts located nothing aside from the plaintiff's correspondence with the agency. (Defendant's Answer to the Complaint, p. 21; 8/13/96 Letter of Assistant United States Attorney Phillip Miller ["AUSA Miller"], pp. 1–2). Therefore, the Government argues, to compel any further searches would be pointless, the plaintiff's motion to compel should be denied and the CIA's motion to dismiss the complaint should be granted. (8/13/96 Letter of AUSA Miller, pp. 1–2).

The defendant does not address the plaintiff's argument that Item Four of the FOIA request is searchable within the Agency's filing system.

3. *The Defendant State Department's Position*

As for the plaintiff's requests for Items Two and Three, the Government seeks a stay of this action to permit the State Department to "properly and fairly process the plaintiff's request in the order it was received." (9/27/97 Letter of AUSA Miller, p. 2). The Government estimates that based on their current rate of processing, the Department will reach a determination on the plaintiff's request by March 1998. (3/20/96 Sheils Decl., p. 19).

The Government does not address the plaintiff's contention that Item Four describes a subject that is searchable within the State Department's record–keeping systems, contrary to the Department's initial determination of the FOIA request.

## III. DISCUSSION

### A. The CIA FOIA Request

#### 1. *Item One: The Defendant CIA's Motion to Dismiss*

Given that the parties have presented matters outside the pleadings, which the Court has not excluded from its consideration of the Government's dismissal motion, this Court, in its exercise of discretion, will treat the Government CIA's motion to dismiss the plaintiff's claim relating to Item One as a partial motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See generally Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir.1988) (where materials lying outside the four corners of the pleading are entertained by court in assessing a motion to dismiss, the court must either exclude the additional materials from its consideration and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R.Civ.P. 56). The Court notes that the defendant CIA "does not cite any specific federal procedural rule as the basis for its motion to dismiss, and does not cite any case law in support of its motion to dismiss, and, moreover, does not cite any case law in support its position. [However, s]ince the defendant has submitted both [Strickland's] affidavit and the letter of [AUSA Miller dated August 12, 1996], the Court will construe this motion as seeking summary judgment." *Katzman v. Central Intelligence Agency*, 903 F.Supp. 434 (E.D.N.Y.1995).

Nevertheless, the Court will not address the merits of the defendant's partial summary judgment motion at this time for two reasons.

First, the Court has reviewed the Strickland Declaration, submitted by the defendant CIA, and finds that it is insufficient to establish that the Agency conducted an adequate search for the requested materials. Accordingly, the defendant CIA is ordered to submit a supplemental declaration in keeping with the following instructions.

■ In evaluating whether to grant a motion for summary judgment in a FOIA action, a district court must review the facts in a light most favorable to the requestor. *Katzman v. Freeh*, 926 F.Supp. 316, 319 (E.D.N.Y.1996) (citing *Becker v. IRS*, 34 F.3d 398 [7th Cir.1994] ). The agency bears the burden of establishing that its search for the requested materials was reasonable and adequate. *Carney v. United States Dept. of Justice*, 19 F.3d 807, 812 (2d Cir.), *cert. denied*, 513 U.S. 823, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search suffice to meet this burden and a district court may award summary judgment based on such declarations and affidavits. *Id.* Additionally, affidavits "submitted by an agency are accorded a presumption of good faith." *Id.* (citations omitted).

■ Nevertheless, an agency's affidavits, while presumably made in good faith, will be deemed unsatisfactory where they are "conclusory and not relatively detailed." *Katzman v. Central Intelligence Agency*, 903 F.Supp. at 437. Thus, to suffice, agency affidavits should " 'identify the searched files and describe at least generally the structure of the agency's file system' which renders any further search unlikely to disclose additional relevant information." *Id.* (quoting *Church of Scientology v. IRS*, 792 F.2d 146,

151 [D.C.Cir.1986], *affirmed,* 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 [1987] ).

■ In this case, even presuming the reliability of the Strickland declaration, it does not "satisf[y] [the CIA's] burden of establishing the thoroughness of its procedures." *Id.* Indeed, the defendant offers nothing aside from Strickland's statements that two prior Privacy Act searches were conducted without locating responsive documents and that a third search would be futile. Strickland does not describe the general structure of the Agency's record keeping system, or the methods by which the Agency generally conducts its searches. The declaration also neglects to specify which of the Agency's files were searched in response to the prior Privacy Act requests. Also, Strickland never states whether the plaintiff's present FOIA request calls for an examination of the same files involved in the prior searches.

Accordingly, the Court directs the defendant CIA to furnish affidavits from supervisory personnel describing the structure of the Agency's record systems, the identity of the files searched in response to the plaintiff's earlier Privacy Act requests, and an explanation as to why Item One of the plaintiff's FOIA request would have been uncovered in the earlier searches if it were in the Agency's possession.

■ In addition to the inadequacy of the Strickland Declaration, the Court does not address the merits of the Government's partial summary judgment motion for another reason. The Court is mindful of the fact that the *pro se* the plaintiff has not received "notice of the consequences of a failure to respond to a motion to dismiss or for judgment on the pleadings which is being treated as a motion for summary judgment." *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988). "Care should, of course, be taken by the district court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law." 6 James W. Moore, *Moore's Federal Practice* ¶ 56.12, at 56–165 (2d ed.1995); *see*

*also Ruotolo v. Internal Revenue Service,* 28 F.3d 6, 8 (2d Cir.1994) ("Recognizing that the [plaintiffs] were acting *pro se,* the district court should have afforded them special solicitude before granting the IRS's motion for summary judgment."). The plaintiff was not provided with a written Notice of Motion or any other notice explicitly stating that the defendant was moving for partial summary judgment with respect to Item One of the FOIA request.

For the foregoing reasons, the defendant CIA is ordered to submit affidavit(s) consistent with this decision within thirty (30) days of the date of this Memorandum and Order, and the *pro se* plaintiff is advised as follows: (1) the Court elects to treat the Government's motion to dismiss the plaintiff's claim against the CIA with respect to Item One as a partial motion for summary judgment; (2) the plaintiff will be afforded ten (10) days to respond to and offer evidence in opposition to the partial summary judgment motion upon receipt of the Government's supplemental affidavits submitted in support of the motion; (3) the plaintiff's failure to reply may result in the entry of partial summary judgment in the Government's favor with respect to the Item One of his FOIA request.

### 2. *Item Four*

As noted above, the Government does not address, either in the Strickland Declaration or in the letter submitted by AUSA Miller, plaintiff's contention that Item Four describes a subject that is searchable within the CIA's records, contrary to the Agency's initial response to the FOIA request. Accordingly, the Government is ordered to submit an affidavit from CIA personnel stating whether it adheres to its earlier determination that the request did not "reasonably describe the records sought," and, if so, an explanation as to why it reached this determination.

### B. The State Department FOIA Request

#### 1. *Items Two and Three: The Defendant's Motion to Stay the Proceedings*

Subject to the exemptions listed in § 552(b) and certain other limitations, FOIA

requires every Federal agency to make its records available to any person who requests them. Upon receiving such a request, the agency must determine within 10 days whether to comply with it and immediately notify the requestor of the decision. 5 U.S.C. § 552(a)(6)(A). If the agency determines that it will release the records, it must make them "promptly available" to the requestor. 5 U.S.C. § 552(a)(6)(C).

Judicial review of agency determinations under FOIA is authorized by 5 U.S.C. § 552(a)(4)(B), which provides, in relevant part, that the district court has jurisdiction to enjoin the agency from improperly withholding records and to order the production of improperly withheld documents. *See generally Kissinger v. Reporters Comm. For Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980). However, when the agency can demonstrate that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request," 5 U.S.C. § 552(a)(6)(C), the district court may retain jurisdiction and allow the agency additional time to complete its review of the records. *See Freeman v. U.S. Department of Justice (FBI)*, 822 F.Supp. 1064, 1065 (S.D.N.Y. 1993); *Ferguson v. Federal Bureau of Investigation*, 722 F.Supp. 1137, 1140 (S.D.N.Y. 1989). In interpreting the "extraordinary–circumstances–due diligence" provision, the United States Court of Appeals for the District of Columbia, in an oft-cited opinion, held that a stay is warranted where:

> an agency ... is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests.... [D]ue diligence of the agency to comply with all lawful demands under the [FOIA] in as short a time as is possible by assigning all requests on a first–in, first–out basis, except those where exceptional need or urgency is shown, is compliance with the Act.

*Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C.Cir.1976).

■ The few decisions of this Circuit which have confronted this issue generally have followed the Circuit Court's reasoning in *Open America*, and "agencies confronting an overwhelming number of requests ... have been given additional time to respond to them." *Freeman v. U.S. Dept. of Justice*, 822 F.Supp. at 1066 (citing *Ferguson v. FBI*, 722 F.Supp. at 1140). It is within this framework that the Court will address the State Department's motion to stay premised upon "exceptional circumstances" and "due diligence."

In support of its application for a stay until March 1998, the defendant State Department submitted the declaration of Peter M. Sheils, the Department's Acting Director of the Office of Freedom of Information, Privacy and Classification review. In contrast to the bare bones Strickland Declaration, the Sheils declaration is highly detailed and instructive. The declaration states that in 1995—the year the plaintiff submitted his request—the Department was inundated with 1,965 similar inquiries under the FOIA. (3/20/96 Sheils Decl., p. 12). Sheils notes that this figure does not include the tens of thousands of other requests the Department was required to process by the Privacy Act and by referral from other agencies. (3/20/96 Sheils Decl., pp. 12–14).

The Department's policy is that each request proceeds on a "first–in, first–out" basis, unless a formal determination is made to expedite. (3/20/96 Sheils Decl., p. 3). As of March 20, 1996, there were approximately 1,202 requesters in the queue ahead of the plaintiff. (3/20/96 Sheils Decl., p. 18). The State Department departs from its strict "first in, first out" policy only when an individual's life, safety or substantial due process rights would be jeopardized by a failure to respond to a request immediately. (3/20/96 Sheils Decl., p. 4). The Government contends that the plaintiff does not fall into any of these categories, and that absent a showing of exceptional need, it would be unfair to permit the plaintiff to jump to the head of the line.

The Court finds that the defendant State Department has shown the "exceptional circumstances" and "due diligence" that courts have required for a stay. The Department presently faces an overwhelming backlog of requests for information, processes them in the approximate order received unless there is an urgent need for the information and appears to be attempting to comply with requests

■ Finally, while the courts and some agencies, including the defendant State Department, have interpreted FOIA to require expedited processing of requests whenever an "exceptional need or urgency," or "substantial due process right" is at stake, the plaintiff fails to make the requisite showing that would warrant displacing other requesters in line ahead of him. *See Freeman,* 822 F.Supp. at 1067; *Ferguson,* 722 F.Supp. at 1141. First, the plaintiff's argument that he "need[s] the information for use in a future civil proceeding has generally been held to be insufficient to require expedition." *Ferguson,* 722 F.Supp. at 1141 (citing *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 243, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 [1978] [witnesses statements need not be released prior to an unfair labor practice hearing because "FOIA was not intended to function as a discovery tool."]). Second, the Court finds, as a matter of law, that the nature of the plaintiff's proposed civil suit—to enjoin the defendants from targeting him for "satellite–based assault," "surveillance" and "imprisonment"—is:

> far beyond the reach of currently–available technology.... In so ruling, the Court fully understands that technology marches on, and that mechanisms thought impossible in an earlier age are now common. However, unless and until a litigant can produce tangible or scientific evidence that shows the existence of ["Government–sponsored satellite–based attacks"], or at least the technology to produce it, this Court shall recognize no legal right to [expedited treatment of a FOIA request premised upon such a theory].

*Doran v. McGinnis et al.,* 158 F.R.D. 383, 388 (E.D.Mich.1994) (prison officials sued by prisoner on claims that they had implanted telepathic mind control device in his brain were entitled to summary judgment on ground that the plaintiff had stated facts which, to lucid mind, have no reasonable basis in reality and, hence, were unbelievable as a matter of law).

Accordingly, this Court will grant the defendant State Department's motion for a stay of the plaintiff's FOIA request for Items Two and Three until March 31, 1998 or until the plaintiff's request is processed, whichever is sooner.

2. *Item Four*

As noted previously, the State Department neglects to address the plaintiff's contention that Item Four of his FOIA request describes a subject that is searchable within the Department's records, contrary to the Department's initial response to the FOIA request. Additionally, the defendant State Department never advised the plaintiff or the Court whether plaintiff's efforts to clarify Item Four, in his follow–up letter to the agency, were adequate. (3/20/96 Sheils Decl., Exs. 5 and 6). Therefore, the Government is ordered to submit an affidavit from State Department personnel stating whether it adheres to its earlier determination that the request did not "reasonably describe the records sought," and, if so, an explanation as to why that is so.

IT IS, THEREFORE, ORDERED THAT:

(1) the *pro se* plaintiff is notified that: the Government CIA's motion to dismiss the plaintiff's claim relating to Item One of his FOIA request will be treated as a partial motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure; the plaintiff will be afforded ten days to respond to and offer evidence in opposition to the partial summary judgment motion upon receipt of the forthcoming supplemental affidavits of the defendant CIA, and; the plaintiff's failure to reply may result in the entry of partial summary judgment in the Government's favor with respect to the Item One of his FOIA request;

(2) the defendant CIA, within thirty (30) days of the date of this Order, shall file

with this Court affidavits from supervisory personnel describing the structure of the agency's record systems, the identity of the files searched in response to the plaintiff's earlier Privacy Act requests, and an explanation as to why Item One of the plaintiff's FOIA request would have been uncovered in the earlier searches if it were in the agency's possession;

(3) the defendant CIA, within thirty (30) days of the date of this Order, shall submit an affidavit from supervisory personnel stating whether it adheres to its earlier determination that Item Four of the plaintiff's FOIA request did not "reasonably describe the records sought," and, if so, an explanation as to why it reached this conclusion;

(4) the defendant State Department's motion for a stay is granted until March 31, 1998;

(5) the defendant State Department shall submit, within thirty (30) days of the date of this Order, an affidavit from supervisory personnel stating whether it adheres to its earlier determination that Item Four of the plaintiff's FOIA request did not "reasonably describe the records sought," and, if so, an explanation as to why it reached this determination.

**SO ORDERED.**